Randy **KIRKPATRICK**, Petitioner

v.

**BUREAU OF PROFESSIONAL AND OCCUPATIONAL AFFAIRS, STATE BOARD OF BARBER EXAMINERS,** Respondent.

Commonwealth Court of Pennsylvania.

Argued March 9, 2015.

Decided June 10, 2015.

Sheri D. Coover, Carlisle, for petitioner.

Ariel E. O'Malley and Thomas Blackburg, Harrisburg, for respondent.

BEFORE: RENÉE COHN JUBELIRER, Judge, and MARY HANNAH LEAVITT, Judge, and ROCHELLE S. FRIEDMAN, Senior Judge.

OPINION BY Judge RENÉE COHN JUBELIRER.

Randy Kirkpatrick (Licensee) petitions for review of the Final Order of the Bureau of Professional and Occupational Affairs, State Board of Barber Examiners (Board), which revoked Licensee's barber and barber manager licenses for unethical conduct pursuant to Section 9(a)(5) of the Barber License Law [1] (Law), as a result of Licensee's plea of *nolo contendere* to a charge of indecent assault. On appeal Licensee argues, *inter alia*, that the Board erred in concluding that revocation of Licensee's licenses was the appropriate sanction under Section 9(a)(5) of the Law because the conduct associated with Licensee's *nolo contendere* plea had no relationship to his practice of barbering. [2]

Licensee holds licenses from the Board to practice as a barber and barber manager. [3] (Proposed Adjudication, Findings of Fact (FOF) ¶ 1; Hr'g Tr. at 7, 14.) On October 3, 2012, Licensee pled *nolo contendere* to one misdemeanor "count of Indecent Assault, in violation of" Section 3126(a)(7) of the Crimes Code [4] in the court of common pleas. (FOF ¶ 7.) On January 8, 2013, Licensee was sentenced to 24 months of probation, along with other conditions. [5] (FOF ¶ 8.) On the basis of Licensee's *nolo contendere* plea, an Order to Show Cause was filed on April 26, 2013,

---

1. Act of June 19, 1931, P.L. 589, *as amended*, 63 P.S. § 559(a)(5). Section 9(a)(5) provides that "[t]he [B]oard may suspend or revoke any license granted by the department under this act to any person who . . . engages in unethical or dishonest practice or conduct, or violates any of the provisions of this act, or any rules or regulations of the board." *Id.*

2. Licensee also asserts that the Board erred by: (1) treating Licensee's *nolo contendere* plea as a guilty plea and as admitting that he engaged in the conduct underlying the indecent assault charge; and (2) concluding that Licensee's *nolo contendere* plea showed that Licensee's transgressions were serious in nature.

3. It appears that Licensee held a barber license before he was issued his barber manager license. (Hr'g Tr. at 7, 9, 14.) The Board revoked both licenses in its Final Order.

4. 18 Pa.C.S. § 3126(a)(7). Section 3126(a)(7) states that:

 [a] person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and: . . . (7) the complainant is less than 13 years of age. . . .

 *Id.*

5. In addition to probation, Licensee was also sentenced to pay the costs of his prosecution, provide a DNA sample, comply with lifetime sex offender registration requirements, "[o]btain a special offender evaluation and comply with any treatment recommendations," and have no contact with the victim. (FOF ¶ 8.)

seeking disciplinary action against Licensee on the basis that he violated Section 9(a)(5) of the Law, which prohibits unethical conduct.[6] (Proposed Adjudication at 1.)

A hearing was held before a Hearing Examiner, at which Licensee was represented by counsel. The Commonwealth of Pennsylvania (Commonwealth) offered a certified copy of the records from Licensee's criminal proceedings and rested its case. (Hr'g Tr. at 11–12, 19; Ex. C–3.) Licensee testified that he has complied with all of his sentencing terms and was on probation until January of 2015. (Hr'g Tr. at 15.) Licensee agreed that he would post a sign in his shop during the term of his criminal probation that would state that anyone "under the age of 16 must be accompanied by a parent or guardian" and explained that, although he saw twenty-five to forty adult clients per day, he only saw three or four minors each week, who were always accompanied by an adult. (Hr'g Tr. at 14, 16–17.)

■ The Hearing Examiner issued her Proposed Adjudication on January 7, 2014, dismissing the Order to Show Cause. The Hearing Examiner relied on *Eisenberg v. Department of Public Welfare*, 512 Pa. 181, 516 A.2d 333 (1986), for the principle that a "plea of *nolo contendere* [could] *not* be used as an admission of the underlying facts" involved in the criminal charge, but could be used for administrative discipline only where the *nolo contendere* plea was, itself, the operative fact authorizing discipline. (Proposed Adjudication at 7–8 (emphasis in original).) The Hearing Examiner held that "the Law does not contain a provision which authorizes disciplinary action solely on the basis of a criminal conviction," and that Licensee's plea of *nolo contendere* could not be relied upon for the fact that he engaged in the underlying activity alleged. (Proposed Adjudication at 7–8.) Noting that the Commonwealth did not present any independent evidence of Licensee's conduct, the Hearing Examiner concluded that the Commonwealth had not met its burden of proof and dismissed the Order to Show Cause.[7] (Proposed Adjudication at 8; Proposed Order.)

The Board notified the parties that it intended to review the matter regardless of whether exceptions to the Proposed Adjudication were filed. (Notice of Intent to Review.) The Commonwealth filed exceptions, challenging the Proposed Adjudication. After reviewing the record, the Board adopted the Hearing Examiner's Findings of Fact, but rejected the Hearing Examiner's conclusion that Licensee did not violate Section 9(a)(5) of the Law. (Final Adjudication at 2.) The Board relied upon *State Dental Council and Examining Board v. Friedman*, 27 Pa.Cmwlth. 546, 367 A.2d 363 (1976), for the principle that, while a *nolo contendere* plea may not generally be relied upon in a civil proceeding, it may be relied upon as an admission of guilt in an administrative disciplinary proceeding. (Final Adjudication at 3–4.) The Board concluded that Licensee's conduct was, by definition, unethical conduct. (Final Adjudication at 4.) The Board stated

---

6. The Order to Show Cause also included a count alleging Licensee's licenses were subject to sanction under Section 9124(c)(2) of the Criminal History Record Information Act, 18 Pa.C.S. § 9124(c)(2), which permits a licensing body to sanction a license based upon a conviction for conduct involving the licensee's practice. That count was dismissed by the Board and is not at issue in this matter.

7. The Commonwealth had to prove Licensee's violation of Section 9(a)(5) by a preponderance of the evidence. *See Samuel J. Lansberry, Inc. v. Pennsylvania Public Utility Commission*, 134 Pa.Cmwlth. 218, 578 A.2d 600, 602 (1990) (stating that the "burden of proof before administrative tribunals ... is satisfied by establishing a preponderance of evidence which is substantial and legally credible").

that, in pleading *nolo contendere*, Licensee "admit[ted] guilt to the elements of the crime but not to the underlying facts of the case." (Final Adjudication at 4.) The Board explained that "[b]ecause, as he judicially admitted, [Licensee] committed indecent assault, [Licensee] is subject to disciplinary action under [S]ection 9(a)(5) of the" Law. (Final Adjudication at 4.) On the basis of this violation, the Board revoked Licensee's licenses. (Final Order.) Licensee now petitions this Court for review of that Final Order.[8, 9]

Section 9(a) of the Law sets forth the circumstances under which the Board may suspend or revoke a license. 63 P.S. § 559(a). In its entirety, Section 9(a) provides:

(a) The board may suspend or revoke any license granted by the department under this act to any person who

(1) habitually indulges in the use of alcohol, narcotics, or other stimulants to such an extent as, in the opinion of the board, incapacitates such person from the duties of a barber;

(2) has or imparts any contagious or infectious disease to any recipient of such person's services as a barber;

(3) performs work in an unsanitary or filthy manner or place of business;

(4) who is grossly incompetent;

(5) engages in unethical or dishonest practice or conduct, or violates any of the provisions of this act, or any rules or regulations of the board;

(6) employs an unlicensed person;

(7) charges tuition to a student in a licensed barber shop; or

(8) fails to submit to an inspection of his or her shop during hours of the shop.

Before any such license shall be suspended or revoked for any of the reasons contained in this section, the holder thereof shall have notice in writing of the charge or charges against him or her, and shall be given a public hearing before a duly authorized representative of the board with a full opportunity to produce testimony in his or her behalf and to confront the witnesses against him or her. Any person whose license has been so suspended may, on application, have the same reissued to him or her upon satisfactory showing that the disqualification has ceased. Any person whose license was suspended for having or imparting any contagious or infectious disease shall not have his or her license reissued for a period of at least one year, and then only after the person has submitted to the board a notarized statement from a licensed physician that he or she is free from contagious or infectious disease.

63 P.S. § 559(a).

Licensee argues that the revocation of his licenses was not appropriate under Section 9(a)(5) of the Law because the conduct associated with his *nolo contendere* plea had no relationship to his practice of barbering. Licensee asserts that the Commonwealth presented no evidence that the allegations against him took place at his barber shop, involved any of his customers, or otherwise implicated his profession. According to Licensee, when Section 9(a) is reviewed as a whole, it is apparent that its provisions are all associated with conduct or activities related to the profession of barbering. Licensee observes that, unlike the majority of the other occupa-

---

**8.** This Court's review of decisions of a state occupational licensing "[b]oard is limited to determining whether constitutional rights were violated, an error of law was committed, or whether the findings of fact are supported by substantial evidence of record." *Diwara v.*

*State Board of Cosmetology,* 852 A.2d 1279, 1282 n. 4 (Pa.Cmwlth.2004).

**9.** This Court granted Licensee's Petition to Stay Pending Action on Petition for Review.

tional and professional licensing laws in Pennsylvania, the General Assembly did *not* include specific language in the Law authorizing professional discipline of a licensee based on a conviction or guilty or *nolo contendere* plea to criminal conduct. Given the General Assembly's decision *not* to include language in Section 9(a) expressly authorizing professional discipline on these bases, Licensee argues, the only interpretation that makes sense is that Section 9(a)(5) requires that the "unethical or dishonest practice or conduct" be related to the profession of barbering. 63 P.S. § 559(a)(5).

The Commonwealth responds that the language of Section 9(a)(5) is not expressly limited to conduct related to barbering and, as such, extends to any "unethical or dishonest practice or conduct" the Board considers, within its broad discretion, to be serious enough to warrant professional discipline. The Commonwealth notes that subsections (1), (2), (6), (7), and (8) include specific language related to operating a barber shop or performing barbering activities and the General Assembly could have added this limiting language to the relevant portion of subsection (5) if it had intended to limit that subsection to barber-related conduct. The Commonwealth asserts that the General Assembly has cho-

sen to criminalize the type of behavior to which Licensee pled *nolo contendere* and, therefore, such behavior should be considered unethical conduct under Section 9(a)(5) and the Board was authorized to discipline Licensee for that conduct.

■ This Court's standard for reviewing the discipline imposed by a professional board is extremely deferential. *Blumenschein v. Housing Authority of Pittsburgh*, 379 Pa. 566, 109 A.2d 331, 334–35 (1954).[10] However, the resolution of the question before us requires the interpretation of Section 9(a)(5) of the Law and, accordingly, involves a question of law subject to *de novo* review. *Kistler v. State Ethics Commission*, 610 Pa. 516, 22 A.3d 223, 227 (2011). "While courts traditionally accord the interpretation of the agency charged with administration of the act some deference, [ ] the meaning of a statute is essentially a question of law for the court." *Girard School District v. Pittenger*, 481 Pa. 91, 392 A.2d 261, 263 (1978).

■ The touchstone of interpreting statutory language "is to ascertain and effectuate the intention of the General Assembly." Section 1921 of the Statutory Construction Act of 1972 (SCA), 1 Pa. C.S. § 1921(a); *Colville v. Allegheny County*

---

**10.** Our Supreme Court, in *Blumenschein*, described the level of review a court may engage in when reviewing an administrative agency's act of discretion as follows:

> it has been established as an elementary principle of law that courts will not review the actions of governmental bodies or administrative tribunals involving acts of discretion, in the absence of bad faith; fraud, capricious action or abuse of power; they will not inquire into the wisdom of such actions or into the details of the manner adopted to carry them into execution. It is true that the mere possession of discretionary power by an administrative body does not make it wholly immune from judicial review, but the scope of that review is limited to the determination of whether there

has been a manifest and flagrant abuse of discretion or a purely arbitrary execution of the agency's duties or functions. That the court might have a different opinion or judgment in regard to the action of the agency is not a sufficient ground for interference; judicial discretion may not be substituted for administrative discretion.

*Blumenschein*, 109 A.2d at 334–35 (emphasis omitted). Thus, "[i]n the absence of bad faith, fraud, capricious action or abuse of power, reviewing courts will not inquire into the wisdom of the agency's action or into the details or manner of executing agency action." *Slawek v. Commonwealth, State Board of Medical Education and Licensure*, 526 Pa. 316, 586 A.2d 362, 365 (1991).

*Retirement Board,* 592 Pa. 433, 926 A.2d 424, 434 (2007). A guiding principle of statutory construction is that, "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). Only when the words of a statute are unclear or ambiguous will courts engage in statutory construction to determine the intent of the General Assembly. 1 Pa.C.S. § 1921(c); *Zane v. Friends Hospital,* 575 Pa. 236, 836 A.2d 25, 31 (2003). "A statute is ambiguous when there are at least two reasonable interpretations of the text under review." *Warrantech Consumer Products Services, Inc. v. Reliance Insurance Company in Liquidation,* 626 Pa. 218, 96 A.3d 346, 354–55 (2014). When a statute is ambiguous, the General Assembly's intention "may be ascertained by considering, among other matters: ... (5) ... other statutes upon the same or similar subjects[, and] (6) [t]he consequences of a particular interpretation." 1 Pa.C.S. § 1921(c)(5)-(6). "Statutes should receive a sensible construction and should be construed[,] if possible[,] so that absurdity and mischief may be avoided." *Capital Academy Charter School v. Harrisburg School District,* 934 A.2d 189, 193 (Pa. Cmwlth.2007).

The Law does not define any of the relevant terms, and Licensee and the Commonwealth both have reasonable interpretations of Section 9(a). Therefore, we conclude that this provision is ambiguous. *Warrantech Consumer Products Services, Inc.,* 96 A.3d at 354–55. Accordingly, we turn to the rules of statutory interpretation to determine whether Section 9(a)(5) authorizes the Board to revoke Licensee's licenses for conduct that is unrelated to his practice of barbering.[11]

A review of Section 9(a) reveals that the other conduct referenced in that section relates, either directly or through reasonable inference, to the profession of barbering. As observed by the Commonwealth, subsections (1), (2), (6), (7), and (8) include specific language related to operating a barber shop or performing barbering activities. 63 P.S. § 559(a)(1), (2), (6)-(8). Subsections (3) and (4) clearly implicate the practice of barbering, as they refer to disciplining a licensee for *"perform[ing] work* in an unsanitary or filthy manner or place of business," and being "grossly incompetent," respectively. 63 P.S. § 559(a)(3), (4) (emphasis added). It would be unreasonable to conclude that the General Assembly meant to authorize, in this Law, the suspension of a barbering license based on how a licensee performs non-barbering work or for being grossly incompetent at something other than barbering, such as mowing a lawn. *See* Section 1922(1) of the SCA, 1 Pa.C.S. § 1922(1) (stating that it is presumed that "the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable"). Additionally, the remaining language of subsection (5), authorizing discipline for "violat[ing] any of the provisions of this act, or any rules or regulations of the [B]oard," 63 P.S. § 559(a)(5), relates to the practice of barbering. To parse out the language at issue, "engages in unethical or dishonest practice or conduct," from the remainder of Section 9(a) and treat it as applying to *all* conduct a licensee may engage in is inconsistent with the statutory scheme set forth in Section 9(a)(5).

---

**11.** We note that both the Hearing Examiner and the Board found that the allegations to which Licensee pled *nolo contendere* did not relate to his profession, and the Commonwealth did not appeal the Board's determination. (Proposed Adjudication, Conclusions of Law ¶ 4; Proposed Adjudication at 9–10; Final Adjudication at 2.)

The Board's regulations offer some guidance in determining the meaning of Section 9(a). Like the Law, the regulations do not define any of the relevant terms, and they do not address the revocation of licenses or other professional discipline. *See* 49 Pa.Code §§ 3.1–3.103. However, the regulations do refer to "unethical conduct" in 49 Pa.Code § 3.5, which states that "[t]he discrimination by a licensee *in the practice of barbering* against any person because of race, color, religious creed, sex, ancestry, National origin, physical handicap or disability *is unethical conduct.*" (Emphasis added.) This regulation provides an example of "unethical conduct" under the Law and specifically associates it with "the practice of barbering," which offers support for a conclusion that such conduct must be related to the practice of barbering.

We may also examine "other statutes upon the same or similar subjects" to ascertain the General Assembly's intent. 1 Pa.C.S. § 1921(c)(5). In reviewing the other statutes governing professions and occupations in Pennsylvania, it becomes apparent that the Law is different from the majority of those statutes because it does not contain a provision that authorizes the suspension or revocation of a license based solely on a conviction of or a guilty or *nolo contendere* plea to a particular type or category of crime. *See, e.g.,* Section 9.1(5)-(6.1) of the CPA Law[12] (authorizing, *inter alia,* the suspension or revocation of a CPA license based on a licensee's "[p]leading guilty to, entering a plea of *nolo contendere* to or being found guilty of a felony," or "of any crime, an element of which is dishonesty or fraud," or "of violating any Federal or State revenue law"); Section 4.1(a)(4) of The Dental Law[13] (authorizing the suspension or revocation of the license of any licensee who "ha[s] been found guilty of a crime or misdemeanor involving moral turpitude ... or ... a felony"); Section 16(a)(2) of the Podiatry Practice Act[14] (permitting the refusal to grant, suspension, or revocation of a license or registration based on the applicant or licensee "[p]leading guilty or *nolo contendere* to, or being found guilty ... in the disposition of felony charges or an offense in connection with the practice of podiatric medicine or involving moral turpitude"); Section 14(a)(5), (9) of the Professional Nursing Law[15] (providing that a license may be suspended or revoked where "[t]he licensee has been convicted, or has pleaded guilty, or entered a plea of *nolo contendere* ... of a felony or a crime of moral turpitude" or "has been guilty of immoral or unprofessional conduct").[16] These provisions require a conviction, plea, or some finding of guilt of the offending conduct and are in addition to practice-related misconduct or activities that would otherwise authorize professional discipline.

■ In addition to the Law, the General Assembly has chosen not to include crimi-

---

**12.** Act of May 26, 1947, P.L. 318, added by Section 7 of the Act of September 2, 1961, P.L. 1165, *as amended,* 63 P.S. § 9.9a(5)-(6.1).

**13.** Act of May 1, 1933, P.L. 216, added by Section 5 of the Act of December 20, 1985, P.L. 513, *as amended,* 63 P.S. § 123.1(a)(4).

**14.** Act of March 2, 1956, P.L. (1955) 1206, *as amended,* 63 P.S. § 42.16(a)(2).

**15.** Act of May 22, 1951, P.L. 317, *as amended,* 63 P.S. § 224(a)(5), (9).

**16.** The majority of the statutes found in Title 63 that involve the licensing of occupations and professions have similar provisions. We note that this Court has held that, even where a past conviction is present, such convictions are not always a basis for professional discipline if they are remote in time and unrelated to the licensee's profession. *Ake v. Bureau of Professional and Occupational Affairs, State Board of Accountancy,* 974 A.2d 514, 519 (Pa. Cmwlth.2009) (citing *Secretary of Revenue v. John's Vending Corporation,* 453 Pa. 488, 309 A.2d 358, 362 (1973)).

nal convictions or pleas of guilty or *nolo contendere* as bases for professional discipline in other professions. Section 13(a) of the Beauty Culture Law [17] contains similar language indicating that a license can be revoked "for gross incompetency or dishonest or unethical practices" but, like the Law, does not include any reference to revocation for criminal convictions. *See also* Section 6 of the Poultry Technicians Act [18] (setting forth bases for professional discipline that do not include a criminal conviction); Section 4(4) of the Landscape Architects' Registration Law [19] (authorizing professional discipline if the State Board of Landscape Architects finds the licensee guilty "of gross negligence, incompetence or misconduct in the practice of landscape architecture," but does not include a criminal conviction as being a basis for professional discipline); Section 4(a)(3) of the Water and Wastewater Systems Operators' Certification Act [20] (authorizing professional discipline for misconduct related to the performance of duties but does not include a criminal conviction as being a basis for professional discipline); Section 6 of the Asbestos Occupations Accreditation and Certification Act [21] (authorizing professional discipline under certain circumstances that do not include a criminal conviction). After examining these statutes related to professional discipline in other licensed occupations, we conclude that, had the General Assembly intended a barber

licensee be subject to professional discipline based on a conviction, guilty plea, or plea of *nolo contendere* to a crime generally or a particular type of crime, it would have included language in the Law to authorize discipline on that basis.

■ Finally, this Court may look at "[t]he consequences of a particular interpretation" to ascertain the General Assembly's intent. 1 Pa.C.S. § 1921(c)(6). Absent the specific standards found in the other statutes related to the type of non-professional conduct or criminal activity that authorizes professional discipline, it will be left solely to the Board's discretion to determine what "unethical or dishonest practice or conduct" warrants professional discipline. Although we acknowledge the seriousness of the charge to which Licensee pled *nolo contendere* in this case, given the extreme deference our Courts give to the Board's decisions on professional discipline, *Blumenschein*, 109 A.2d at 334–35, the potential exercise of the Board's discretion without any guidance from specific or established standards is a concerning consequence of adopting the Commonwealth's interpretation of Section 9(a)(5). Given this potential, and that the General Assembly set forth specific conduct and standards in the other statutes when it intended that discipline could be imposed, we do not believe the General Assembly, by *not* specifically granting that authority, intended thereby to grant unlimited discretion to the Board to impose discipline.[22]

---

17. Act of May 3, 1933, P.L. 242, *as amended,* 63 P.S. § 519(a).

18. Act of April 6, 1956, P.L. (1955) 1429, 63 P.S. § 646.

19. Act of January 24, 1966, P.L. (1965) 1527, *as amended,* 63 P.S. § 904(4).

20. Act of November 18, 1968, P.L. 1052, *as amended,* 63 P.S. § 1004(a)(3).

21. Act of December 19, 1990, P.L. 805, *as amended,* 63 P.S. § 2106.

22. For example, violation of parole could arguably be considered generally "unethical or dishonest," and under the Board's interpretation provide a basis for its exercise of professional discipline. We take judicial notice that Barber Vocational Training is provided in many of the Commonwealth's Correctional Facilities. *See* http://discovercorrections.com/jobboard/display-job/51267/, last visited May 11, 2015 (job posting for a corrections barber instructor at a Commonwealth correctional facility).

 For the foregoing reasons, we conclude that the phrase "engages in unethical or dishonest practice or conduct" as used in Section 9(a)(5) of the Law requires that the conduct upon which professional discipline may be imposed must relate to the practice of barbering. Because the Commonwealth presented no evidence to establish that the allegations to which Licensee pled *nolo contendere* were related to his profession, we reverse the Board's Order.[23]

---

**23.** Because of our resolution of this issue, we will not address Licensee's other allegations of error.

### ORDER

**NOW,** June 10, 2015, the Order of the Bureau of Professional and Occupational Affairs, State Board of Barber Examiners, entered in the above-captioned matter, is hereby **REVERSED.**