# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Marvin Fulton, | : | |
| | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 196 C.D. 2017 |
| | : | Submitted: July 21, 2017 |
| Bureau of Professional and | : | |
| Occupational Affairs, State Board | : | |
| of Barber Examiners, | : | |
| | : | |
| Respondent | : | |

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
HONORABLE JULIA K. HEARTHWAY, Judge[1]
HONORABLE JAMES GARDNER COLINS, Senior Judge

**OPINION BY**
**SENIOR JUDGE COLINS**                    **FILED:  September 12, 2017**

Marvin Fulton (Petitioner) petitions, *pro se*, for review of an order of the State Board of Barber Examiners (Board) under the Barber License Law[2] denying reinstatement of his barber manager license.  For the reasons set forth below, we reverse and remand this matter to the Board for further proceedings.

Petitioner was licensed by the Board as a barber in 1985 and as a barber manager in 1992.  (Certified Record Item (R. Item) 7, 2016 Board Order Adopting Hearing Examiner's Proposed Adjudication and Order (2016 Board Order), Findings of Fact (F.F.) ¶¶1-2.)  In 2002, the Board placed Petitioner's

---

[1] This decision was reached before Judge Hearthway's service with the Court ended on September 1, 2017.

[2] Act of June 19, 1931, P.L. 589, *as amended*, 63 P.S. §§ 551-567.

barber manager license on probation as the result of a 1996 federal drug conviction. (*Id.* F.F. ¶3.) That period of probation expired prior to the events at issue in this appeal. (R. Item 3, Hearing Transcript (H.T.) at 24.) In 2003, the Board issued Petitioner a barber shop license. (R. Item 7, 2016 Board Order, F.F. ¶4.)

In 2009, Petitioner was convicted in the Court of Common Pleas of York County of two felonies and one misdemeanor, possession of a controlled substance with intent to deliver, delivery of a controlled substance, and possession of a controlled substance in violation of Sections 13(a)(30) and (32) of the Controlled Substance, Drug, Device and Cosmetic Act,[3] and was sentenced to seven to twenty years in prison. (R. Item 7, 2016 Board Order, F.F. ¶¶9-10.) These convictions arose out of a sale and seizure of cocaine in August 2008. (R. Item 3, Board Ex. 1, 2010 Board Order Adopting Hearing Examiner's Proposed Adjudication and Order (2010 Board Order), F.F. ¶¶10-11, 14.) On December 30, 2010, the Board revoked Petitioner's barber manager license, barber license and barber shop license based on those convictions.[4] (R. Item 7, 2016 Board Order, F.F. ¶12; R. Item 3, Board Ex. 1, 2010 Board Order.)

Petitioner was paroled on September 16, 2015. (R. Item 7, 2016 Board Order, F.F. ¶14.) On January 31, 2016, Petitioner filed a Reinstatement Application for Professional Licensure by Examination with the Board seeking to take the barber manager examination and obtain reinstatement of his barber

---

[3] Act of April 14, 1972, P.L. 233, § 13(a)(30), (32), *as amended*, 35 P.S. § 780-113(a)(30), (32).

[4] Petitioner's barber license had become inactive in 1994 and his barber manager and barber shop licenses had become inactive or expired in April 2010, but the licenses could be reactivated, prior to the revocation, upon the filing of certain documents and payment of fees. (R. Item 7, 2016 Board Order, F.F. ¶¶1-2, 5-6; R. Item 3, Board Ex. 1, 2010 Board Order, F.F. ¶¶2, 4, 7.)

2

manager license. (*Id.*, F.F. ¶18; R. Item 3, Board Ex. 1, Petitioner's Reinstatement Application.) In this application, Petitioner disclosed his convictions and the revocation of his licenses. (R. Item 3, Board Ex. 1, Petitioner's Reinstatement Application.) On April 28, 2016, the Board ordered that Petitioner's reinstatement application be treated as a petition for reinstatement of his barber manager license and delegated it to a hearing examiner.

At the hearing on June 17, 2016, Petitioner, who was 58 years old, testified that since his release from prison, he has been employed by a church doing maintenance and custodial work and that he lives with and helps care for his mother, who has diabetes. (R. Item 3, H.T. at 17-19, 40-41, 44.) Petitioner admitted that he had used cocaine in the past and that he committed the drug crimes for which he was convicted. (*Id.* at 19-20, 23-24, 46.) Petitioner introduced documents showing his successful completion of an alcohol and drug abuse program and other programs in prison and testified that he is subject to alcohol and drug testing on his parole, has passed all alcohol and drug tests, and is current on all fines that he has been ordered to pay. (*Id.* at 20-23, 26-39, 46; R. Item 3, Applicant Ex. 1.) Petitioner testified that he did not have definite plans as to where he would work as a barber, but that if he was licensed, he intended to work temporarily for another barber and ultimately open his own barbershop and that he wanted to get his license because barbering is "what I do." (R. Item 3, H.T. at 37-39, 43-44.)

The Board's 2010 Order revoking Petitioner's licenses and records of the charges of which Petitioner was convicted in 2009 were also introduced in evidence. (R. Item 3, H.T. at 12-15.) The records of the criminal charges showed that cocaine was found at the address at which Petitioner resided. (R. Item 3,

3

Board Ex. 1, Police Criminal Complaints.) That address was the same building where Petitioner's barbershop was located, but Petitioner testified that he resided in a separate apartment upstairs from the barbershop and that the search that found the cocaine was a search of his apartment, not the barbershop, and he denied that any drug activity occurred in the barbershop. (R. Item 3, H.T. at 18-20, 38, 48.) The documentary evidence introduced at the hearing concerning the criminal convictions did not reference a barbershop or business and simply stated the address, without any indication whether the location where the cocaine was found was the barbershop or Petitioner's residence. (R. Item 3, Board Ex. 1, Police Criminal Complaints.) There was no other evidence introduced at the hearing concerning the location of the sale of cocaine for which Petitioner was convicted and no evidence was introduced that Petitioner ever sold cocaine from the barbershop.

On October 20, 2016, the hearing examiner issued a Proposed Adjudication and Order setting forth findings of fact and concluding that the Petitioner should not be able to obtain a barber license. In his Proposed Adjudication and Order, the hearing examiner found credible Petitioner's testimony concerning his work since his release from prison, his care for his mother and his compliance with the conditions of his release from prison. (R. Item 4, Hearing Examiner's Proposed Adjudication and Order, F.F. ¶15 & Discussion at 13.) The hearing examiner, however, concluded that Petitioner's drug convictions showed unfitness to practice barbering, stating that the 2009 convictions involved cocaine found on "the premises of Petitioner's barber shop" and that "[t]here is no dispute that Petitioner's convictions were based, at least in part, on conduct that occurred in his barber shop." (*Id.*, F.F. ¶11 & Discussion at 11.) Given those

4

determinations, the hearing examiner concluded that Petitioner was required to show that he was rehabilitated and found that Petitioner had shown insufficient evidence of community and religious activities and participation in drug and alcohol programs outside of prison to establish that he had made "substantial personal progress in rehabilitation" and overcome the fact that he had twice engaged in drug trafficking. (*Id.*, F.F. ¶17 & Discussion at 13.) On December 23, 2016, the Board issued its Final Adjudication and Order in this matter adopting the hearing examiner's Proposed Adjudication and Order as its final order and denying Petitioner's application for reinstatement of licensure as a barber. This appeal followed.

Our review is limited to determining whether the Board's necessary findings of fact are supported by substantial evidence in the record and whether the Board committed an error of law or constitutional violation. *Kirkpatrick v. Bureau of Professional and Occupational Affairs, State Board of Barber Examiners*, 117 A.3d 1286, 1289 n.8 (Pa. Cmwlth. 2015). Petitioner argues that the Board's finding that his drug convictions were related to his barbershop is not supported by the evidence before it. We agree.

The only evidence connecting Petitioner's convictions to his barbershop or work as a barber were charging documents stating that cocaine was found at an address that contained two separate premises, Petitioner's barbershop and Petitioner's residence. Nothing in the record showed that cocaine was found in the barbershop. To the contrary, the documents from the criminal case merely stated the address and also state that the same address is the address at which Petitioner "lives." (R. Item 3, Board Ex. 1, Police Criminal Complaints.) The Board's records show that the address referenced in the criminal records included

5

both the barbershop address and Petitioner's residence address. (R. Item 3, Board Ex. 1, 2010 Board Order, F.F. ¶¶5, 9.) Petitioner testified that his residence was separate from the barbershop. (R. Item 3, H.T. at 18, 48.) Moreover, the Barber License Law required that his residence be distinct and separate from his barber shop. *See* Section 10 of the Barber License Law, 63 P.S. § 560 (prohibiting use of a barber shop as sleeping quarters or for residential purposes). Given Petitioner's uncontradicted testimony that the drugs were found in his residence (R. Item 3, H.T. at 19-20, 48) and the complete absence of any other evidence as to which of the separate premises was involved or that both were involved, the Board's conclusion that Petitioner's drug activity occurred at or involved his barbershop is not supported by substantial evidence in the record. *See U.S. National Bank Association v. United Hands Community Land Trust*, 129 A.3d 627, 632-37 (Pa. Cmwlth. 2015) (evidence supporting only suspicion or conjecture does not constitute substantial evidence); *Barnes v. Department of Justice*, 452 A.2d 593, 595 (Pa. Cmwlth. 1982) (same).[5]

---

[5] The Board's 2010 Order revoking Petitioner's licenses is likewise not sufficient to support a finding here that Petitioner's drug offenses occurred in or involved his barbershop. The only factual findings that the Board made in its 2010 Order were that the cocaine was found at the address where both Petitioner's barbershop and residence were located, without any determination as to whether the barbershop or only the residence was involved. (R. Item 3, Board Ex. 1, 2010 Board Order, F.F. ¶¶11, 14, Conclusion of Law (C.L.) ¶5 & Discussion at 9.) Although the Board also stated that this fact was sufficient to establish a nexus between the barbershop and Petitioner's misdemeanor conviction (*Id.*, C.L. ¶5 & Discussion at 9) and Petitioner did not appeal the 2010 Order, that does not bar him from disputing that his convictions were connected to the barbershop in this proceeding. Collateral estoppel applies only where the determination in the prior proceeding was essential to the judgment. *Liberty Mutual Insurance Co. v. Bureau of Workers' Compensation, Fee Review Hearing Office (Kepko, D.O.)*, 37 A.3d 1264, 1269 n.12 (Pa. Cmwlth. 2012); *In re Private Road in Union Township*, 611 A.2d 1362, 1364-65 (Pa. Cmwlth. 1992). Proof that Petitioner's 2009 convictions were related to his barbershop was unnecessary to the 2010 Order because the Board based the revocation on his felony convictions, which, as discussed below, are grounds for license revocation without a
**(Footnote continued on next page…)**

Absent a valid finding that Petitioner's 1996 or 2009 convictions were related to his barbershop or barbering work, the Board's refusal to permit Petitioner to take the barber manager examination and seek licensure cannot stand. The Board's decision was based on those convictions and the conclusion that the 2009 convictions were connected to Petitioner's barbershop; it denied his petition because it found that those convictions showed unfitness to practice barbering and that Petitioner had not shown that he was sufficiently rehabilitated to permit him to obtain a barber's license in light of those convictions.

Two statutes govern whether reinstatement of a barber's license may be denied or revoked based on a criminal conviction unrelated to the license, the Barber License Law and Section 9124 of the Criminal History Record Information Act (CHRIA), 18 Pa. C.S. § 9124. The interpretation of these statutes is a question of law over which this Court exercises *de novo* review. *Kirkpatrick*, 117 A.3d at 1290. We conclude that neither of these statutes permits the Board to deny an application for licensure as a barber or reinstatement of a revoked barber's license based on a criminal conviction without any evidence that the conviction relates to or is based on conduct that has some effect on the applicant's work as a barber or use of his barber license.

The Barber License Law does not provide for denial of licensure or revocation of a license for criminal activity unrelated to the practice of barbering. Sections 3 and 9 of the Barber License Law, 63 P.S. §§ 553, 559; *Kirkpatrick*, 117 A.3d at 1289-94. The Barber License Law requires only that applicants be at least 16 years old, have at least an eighth grade education, have a specified amount of

**(continued…)**
relationship between the crime and professional license. (R. Item 3, Board Ex. 1, 2010 Board Order, Discussion at 9-10.)

7

barber training and experience, and pass the applicable barber examinations and does <u>not</u> require that applicants demonstrate that they are of good moral character or restrict licensure based on prior criminal convictions.   63 P.S. § 553(a), (c).[6]

---

[6] Section 3 of the Barber License Law provides that the requirements for a barber's license and barber manager are as follows:

> (a) Each applicant for a barber's license shall, as a condition precedent to obtaining a license, take the barber's license examination and score a passing grade. Prior to taking the examination the applicant shall be at least sixteen years of age, have completed the eighth grade or its equivalent and have completed a barbering study and training period of at least one thousand two hundred fifty (1250) hours and not less than nine months either in a licensed barber school under the instruction of a licensed teacher, or in a licensed barber shop under the instruction of a licensed teacher. A notarized application for a license as a barber shall be made in such form as the board shall prescribe. The application shall also be accompanied by a notarized statement, from either the licensed barber school the applicant attended or the licensed barber-teacher in the licensed barber shop in which the applicant studied and trained, that the student has completed the study and training period required in this subsection. At the time of filing the application and accompanying notarized statements, the applicant shall pay to the department an examination fee to be determined by regulation and shall present himself or herself at the next examination of applicants as provided in section 6. The board shall not have the power to require a photograph as part of an application for a barber's license.
>
>      *       *       *
>
> (c) Each applicant for a manager-barber's license shall, as a condition precedent to obtaining a license, take the manager-barber's license examination and score a passing grade. Prior to taking the examination, the applicant shall have completed the eighth grade or its equivalent and actively engaged in the practice of barbering, as a licensed barber, for one or more years. The board shall properly notify every licensed barber that if he or she has been actively engaged in the practice of barbering he or she shall, upon filing an application therefor prior to January 1, 1981, be licensed as a manager-barber without examination. A notarized application for a license as a manager-barber shall be made in such form as the board shall prescribe. The application shall be accompanied by a notarized statement, from either the owner or manager of the licensed barber shop or shared shop as set forth in section 15-A.3 in which the applicant has been employed, that the applicant has been actively engaged in the practice of barbering, as a licensed barber, for one or more years. The board shall not have the power to require a photograph as part of an application for a manager-barber's license. At the time of filing the application and accompanying notarized statement, the applicant shall pay to the department an examination

**(Footnote continued on next page…)**

8

This statutory language stands in sharp contrast to licensure statutes for other professions, which impose specific requirements that the applicant be of good moral character or permit the denial of licensure based on criminal convictions.[7]

---

**(continued…)**

        fee to be determined by regulation and shall present himself or herself at the next examination of applicants as provided in section 6.

63 P.S. § 553(a), (c).

[7] *Compare*, *e.g.*, Section 4.2(b)(2) of the CPA Law, Act of May 26, 1947, P.L. 318, added by the Act of July 9, 2008, P.L. 954, *as amended*, 63 P.S. § 9.4b(b) ("Before an individual may take the examination, the board shall be satisfied that the individual: … (2) is of good moral character"); Section 4.1(a)(4) of the Dental Law, Act of May 1, 1933, P.L. 216, added by the Act of December 20, 1985, P.L. 513, *as amended*, 63 P.S. § 123.1(a)(4) (authorizing refusal of a license to any dentist or dental hygienist who has "been found guilty of a crime or misdemeanor involving moral turpitude or ... a felony"); Sections 6(a) and (c) of the Professional Nursing Law, Act of May 22, 1951, P.L. 317, *as amended*, 63 P.S. § 216(a), (c) ("Every applicant, to be eligible for examination for licensure as a registered nurse, shall furnish evidence satisfactory to the Board that he or she is of good moral character;" "The Board shall not issue a license or certificate to an applicant who has been convicted of a felonious act prohibited by the act of April 14, 1972 (P.L. 233, No. 64), known as 'The Controlled Substance, Drug, Device and Cosmetic Act,' or convicted of a felony relating to a controlled substance in a court of law of the United States or any other state, territory or country unless: (1) at least ten (10) years have elapsed from the date of conviction [and] (2) the applicant satisfactorily demonstrates to the Board that he has made significant progress in personal rehabilitation …"); Section 3(a) of the Pharmacy Act, Act of September 27, 1961, P.L. 1700, *as amended*, 63 P.S. § 390-3(a) ("The State Board of Pharmacy may license as a pharmacist any person who has filed an application therefor … and who-- … (2) Has satisfied the board that he is of good moral and professional character … [and] (6) Has not been convicted of a felonious act prohibited by the act of April 14, 1972 (P.L. 233, No. 64), known as 'The Controlled Substance, Drug, Device and Cosmetic Act,' or convicted of a felony relating to a controlled substance in a court of law of the United States or any other state, territory or country unless: (i) at least ten years have elapsed from the date of conviction [and] (ii) the applicant satisfactorily demonstrates to the board that he has made significant progress in personal rehabilitation …"); Section 22(b) of the Medical Practice Act of 1985, Act of December 20, 1985, P.L. 457, *as amended*, 63 P.S. § 422.22(b) ("The board shall not issue a license or certificate to an applicant unless the applicant establishes … that the applicant … is of good moral character … [and] shall not issue a license or certificate to an applicant who has been convicted of a felony under the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act, or of an offense under the laws of another jurisdiction which, if committed in this Commonwealth, would be a felony under The Controlled Substance, Drug, Device and Cosmetic Act, unless: (1) at least ten years have elapsed from the date of conviction [and] (2) the applicant satisfactorily demonstrates to the board that he has made significant progress in personal rehabilitation …").

9

Indeed, consistent with the absence in the Barber License Law of character and criminal history restrictions, the Department of Corrections (DOC) has established a barber and barber manager training program for inmates serving substantial prison sentences to allow such inmates to learn the vocational skill of barbering and obtain a license to practice that vocation. DOC Administrative Directive 807 §§ 1(B), 2.

Section 9 of the Barber License Law, governing suspension, revocation and reinstatement of barber licenses, permits revocation or suspension only for conduct related to the licensee's practice of barbering. 63 P.S. § 559(a);[8] *Kirkpatrick*, 117 A.3d at 1289-94. While the grounds for suspension or revocation

---

[8] Section 9(a) of the Barber License Law provides:

> The board may suspend or revoke any license granted by the department under this act to any person who (1) habitually indulges in the use of alcohol, narcotics, or other stimulants to such an extent as, in the opinion of the board, incapacitates such person from the duties of a barber; (2) has or imparts any contagious or infectious disease to any recipient of such person's services as a barber; (3) performs work in an unsanitary or filthy manner or place of business; (4) who is grossly incompetent; (5) engages in unethical or dishonest practice or conduct, or violates any of the provisions of this act, or any rules or regulations of the board; (6) employs an unlicensed person; (7) charges tuition to a student in a licensed barber shop; or (8) fails to submit to an inspection of his or her shop during hours of the shop. Before any such license shall be suspended or revoked for any of the reasons contained in this section, the holder thereof shall have notice in writing of the charge or charges against him or her, and shall be given a public hearing before a duly authorized representative of the board with a full opportunity to produce testimony in his or her behalf and to confront the witnesses against him or her. Any person whose license has been so suspended may, on application, have the same reissued to him or her upon satisfactory showing that the disqualification has ceased. Any person whose license was suspended for having or imparting any contagious or infectious disease shall not have his or her license reissued for a period of at least one year, and then only after the person has submitted to the board a notarized statement from a licensed physician that he or she is free from contagious or infectious disease.

63 P.S. § 559(a).

10

include "engag[ing] in unethical or dishonest practice or conduct," 63 P.S. § 559(a)(5), this Court held in *Kirkpatrick* that the unethical or dishonest practice or conduct must relate to the practice of barbering to be grounds for suspension or revocation and that a criminal conviction unrelated to the licensee's work as a barber is not grounds for discipline under the Barber License Law. 117 A.3d at 1289-94. Section 9 further provides that a barber whose license has been suspended "may, on application, have the same reissued to him or her upon satisfactory showing that the disqualification has ceased," but that the Board "shall not reinstate the license of a person to practice as a barber which has been revoked and such person shall be required to apply for a license after a five-year period in accordance with section 3 [63 P.S. § 553] if he desires to practice at any time after such revocation." 63 P.S. § 559(a), (b).

Unlike the Barber License Law, Section 9124(c) of CHRIA permits a licensing board to revoke or suspend a professional license on the ground that the licensee has been convicted of a felony, with no requirement that the crime relate to the profession in question. 18 Pa. C.S. § 9124(c)(1).[9] The power to revoke a professional license under CHRIA is in addition to the authority of a licensing board to take disciplinary action under its own licensing statute and conviction of a

---

[9] Section 9124(c) of CHRIA provides that
> [b]oards, commissions or departments of the Commonwealth authorized to license, certify, register or permit the practice of trades, occupations or professions may refuse to grant or renew, or may suspend or revoke any license, certificate, registration or permit for the following causes:
> (1) Where the applicant has been convicted of a felony.
> (2) Where the applicant has been convicted of a misdemeanor which relates to the trade, occupation or profession for which the license, certificate, registration or permit is sought.

18 Pa. C.S. § 9124(c).

11

felony is therefore a sufficient ground for license revocation, even where the felony does not fall within the grounds for disciplinary action under the licensing statute in question. *Cannizzaro v. Department of State, Bureau of Professional and Occupational Affairs*, 564 A.2d 564, 566-67 (Pa. Cmwlth. 1989). Section 9124(b)(5) of CHRIA, however, prohibits licensing agencies from using "[c]onvictions which do not relate to the applicant's suitability for the license, certificate, registration or permit" in the "consideration of an application for a license, certificate, registration or permit." 18 Pa. C.S. § 9124(b)(5). Section 9124(b)(5) of CHRIA applies only to applications for licensure and does not restrict a licensing board's power to suspend or revoke a professional license. *Gangewere v. State Architects Licensure Board*, 512 A.2d 1301, 1305-06 (Pa. Cmwlth. 1986).

Here, the issue before the Board was Petitioner's application for reinstatement, not the Board's authority to revoke a license. Because the Board revoked Petitioner's barber licenses in 2010, he was required to satisfy the qualifications of an initial applicant to obtain a barber license. 63 P.S. § 559(b). Petitioner's application for reinstatement was therefore an application for a license. Given the absence of any requirements or prohibitions in the Barber License Law concerning moral character, criminal convictions or conduct unrelated to barbering, a criminal conviction does "not relate to the applicant's suitability for" a barber license unless it involved or was based on conduct connected to the applicant's barbering practice or barbering activities. Section 9124 of CHRIA therefore does not permit the denial of Petitioner's application for reinstatement based on Petitioner's history of criminal convictions or a failure to show sufficient

12

rehabilitation unless there is a showing that either the 1996 or 2009 convictions were related to Petitioner's barbershop or barbering work.

The Board argues that drug convictions should be grounds for denial of reinstatement, regardless of their relationship to the applicant's work as a barber, because barbershops are neighborhood or community gathering places. This argument does not alter our analysis for two reasons.

First, this argument is inconsistent with the statutory language of the Barber License Law. As is discussed above, in contrast to other professional licensure statutes, the legislature in the Barber License Law did not include character or criminal convictions as factors relevant to licensure and limited the misconduct for which a license could be suspended or revoked to conduct involving barbering work. 63 P.S. §§ 553, 559; *Kirkpatrick*, 117 A.3d at 1289-94. If the legislature had viewed drug convictions as inherently relevant to barbering, it could have provided that such convictions are grounds for denial of a license, as it did in the Professional Nursing Law, the Pharmacy Act, and the Medical Practice Act of 1985. *See* 63 P.S. § 216(c); 63 P.S. § 390-3(a)(6); 63 P.S. § 422.22(b).

Second, unlike the professions of nursing, pharmacy and medicine, where the legislature chose to make drug convictions disqualifying, barbering involves no access to restricted substances. The possibility of drug sales through a barbershop and of adverse effect on the community invoked by the Board arises from the fact that a barbershop is a commercial establishment, not from the nature of barbering as a licensed profession, and would be equally present in other commercial establishments, such as corner grocery or convenience stores, that are not subject to professional licensure requirements.

In sum, the Board's finding that Petitioner's 2009 drug convictions were related to his barbershop is not supported by substantial evidence and absent a connection to Petitioner's practice of barbering, such criminal convictions are not grounds for denial of a barber license. Accordingly, we reverse the order of the Board. Because the scope of the hearing and evidence introduced may have been affected by the erroneous assumption that a connection between Petitioner's convictions and his work as a barber was not required, we remand this matter to the Board for further proceedings at which additional evidence concerning the location of the drug activity on which the 2009 convictions were based may be introduced by the Board or the Petitioner. Absent introduction of further evidence and a finding based on such evidence that the 2009 convictions were connected to Petitioner's barbershop or barbering work, the Board shall permit Petitioner to apply for licensure and obtain a barber's license or barber manager's license if he satisfies the requirements of Section 3 of the Barber License Law.

_____
JAMES GARDNER COLINS, Senior Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Marvin Fulton,                                          :
                                                       :
                    Petitioner                         :
                                                       :
            v.                                         :    No. 196 C.D. 2017
                                                       :
Bureau of Professional and                             :
Occupational Affairs, State Board                      :
of Barber Examiners,                                   :
                                                       :
                    Respondent                         :

# O R D E R

AND NOW, this 12th day of September, 2017, the order of the State Board of Barber Examiners in the above matter is REVERSED. This matter is REMANDED to the State Board of Barber Examiners for further proceedings consistent with this opinion.

Jurisdiction relinquished.


_____
JAMES GARDNER COLINS, Senior Judge