# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Rosemarie Abruzzese,        :
          Petitioner        :
       :
        v.        : No. 1121 C.D. 2017
       : Argued: March 8, 2018
Bureau of Professional and        :
Occupational Affairs, State        :
Board of Cosmetology,        :
          Respondent        :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE DAN PELLEGRINI, Senior Judge

OPINION
BY PRESIDENT JUDGE LEAVITT                 FILED: April 16, 2018

Rosemarie Abruzzese (Licensee) petitions for review of an adjudication of the State Board of Cosmetology suspending her esthetician's license for an indefinite period of time because of her single-count felony conviction. Licensee contends that the Board erred and abused its discretion. She argues that the Board considered facts not in the record; did not properly address her mitigating evidence; and could not articulate how its sanction for her misconduct, which occurred before she was first licensed, advances a public interest that the Board was created to advance.

## Background

The State Board of Cosmetology (Board) has issued Licensee a limited license to "engage in the practice of esthetics only." Section 5 of the act commonly known as the Beauty Culture Law, Act of May 3, 1933, P.L. 242, *as amended*, 63 P.S. §511. "Esthetics" is defined as

the practice of massaging the face, applying cosmetic preparations, antiseptics, tonics, lotions or creams to the face, removing superfluous hair by tweezers, depilatories or waxes and the dyeing of eyelashes and eyebrows.

Section 1 of the Beauty Culture Law, 63 P.S. §507.

On June 9, 2016, the Bureau of Professional and Occupational Affairs (Bureau) issued Licensee an Order to Show Cause why her esthetician's license should not be suspended or revoked as a result of her 2015 conviction for possession of controlled substances with intent to deliver. The Bureau initiated its enforcement action under authority of the Criminal History Record Information Act (CHRIA), which authorizes any Commonwealth agency to suspend or revoke a license where "the applicant has been convicted of a felony." 18 Pa. C.S. §9124(c)(1). In her answer, Licensee admitted her plea of *nolo contendere* and asserted mitigating circumstances. A formal hearing was held on January 19, 2017.

At the hearing, the Bureau introduced three documents: its order to show cause; Licensee's answer thereto; and a certified copy of Licensee's single-count felony conviction and sentencing order. Notes of Testimony, 1/19/2017, at 12-14 (N.T. __); Reproduced Record at 12-14 (R.R. __). The Bureau presented no other evidence.

Licensee presented evidence to explain her felony conviction and show what steps she has taken to warrant her continued licensing. Her evidence was unrebutted, and the facts she established are not in dispute.

Licensee is a 31-year-old single mother. She has been a licensed esthetician since June 2015 and is presently employed as a laser technician at Laser Derm Skin Care Center and European Wax Center. She is solely responsible for the financial support of her two children, ages 10 and 5.

2

Licensee testified about the circumstances surrounding her criminal conviction. Licensee explained that she began using drugs in college. Then, in 2012 she sustained injuries in an automobile accident, for which she was prescribed pain medication. As a consequence, she developed an addiction and began selling her prescribed medications in order to purchase other drugs. In June 2014, Licensee sold five strips of Suboxone[1] to an undercover detective. In January 2015, she was arrested for possession of a controlled substance with intent to deliver[2] and incarcerated for 24 hours.

Following her arrest, Licensee cooperated with law enforcement in the investigation and arrest of a physician who was improperly prescribing controlled substances to his patients, including Licensee. She also entered a 30-day detoxification and drug rehabilitation program. On September 21, 2015, Licensee pled *nolo contendere* to possession of a controlled substance with intent to deliver and was sentenced to five years of probation and the payment of court costs in the amount of $2,238. Licensee testified that she has not used opiates since February 12, 2015, when she completed her 30-day rehabilitation. Since then, Licensee has been attending Narcotics Anonymous (NA) and Alcoholics Anonymous (AA) meetings. She regularly sees a therapist.

In June 2015, while her criminal charges were pending, Licensee applied for a limited license as an esthetician. On her application, she disclosed her arrest and the pending criminal charges. In addition, she contacted the State Board

---

[1] Suboxone is a medication approved by the Food and Drug Administration for the treatment of opioid addiction. *See Bowers v. Unemployment Compensation Board of Review*, 165 A.3d 49, 54 n.10 (Pa. Cmwlth. 2017).

[2] *See* Section 13(a)(30) of The Controlled Substance, Drug, Device and Cosmetic Act (Drug Act), Act of April 14, 1972, P.L. 233, *as amended*, 35 P.S. §780-113(a)(30).

of Cosmetology to inquire whether she even had "a shot" at getting a license because of the pending criminal charges and was told "absolutely." N.T. 46; R.R. 46.

Licensee testified that she was "not going to take [her] life or this chance or anything for granted anymore." N.T. 51; R.R. 51. She has a support system and has taken significant steps to maintain sobriety, to which she is committed. In support of her ability to keep this commitment, Licensee presented 15 letters written by family members, friends, clients and her current employers. In addition, three family members testified on her behalf.

Her sister, Danielle Abruzzese, testified that she has observed significant personal growth and change in Licensee. She described Licensee as "accountable … reliable … [and] there for her children." N.T. 16; R.R. 16. She testified that Licensee was "the most dedicated person … to her career[,] loves what she does[, and is] absolutely fabulous at it." N.T. 16-17; R.R. 16-17. Danielle Abruzzese testified that Licensee has a good reputation and gives back to the community by speaking at AA meetings, which gives "strength and hope" to persons struggling with addiction. N.T. 20; R.R. 20.

Licensee's mother, Terese Abruzzese, testified. She attributed Licensee's drug use to the 2012 car accident, after which Licensee developed a dependency upon the pain medication she was prescribed. Licensee's mother noted that during the period of Licensee's drug dependency, she did not steal money. Licensee's mother testified that Licensee deserved a second chance because "she loves … [the] profession" and is "living clean and living well every single day." N.T., 27, 29; R.R. 27, 29. As a registered nurse, Licensee's mother acknowledged that there was always a chance of relapse, but explained:

> [W]hat I've read, and I've read extensively on the issue of addiction and the disease, there are certain things that really

4

eliminate or really modify those chances of relapse. And they are a strong support system, working the program, and having a spiritual relationship with God. And [Licensee's] very solid there. So with those things in place, I think the chances of relapse are low.

N.T. 32; R.R. 32.

Licensee's mother testified that since the arrest, Licensee has been giving back to the community in different ways. She buys toys and donates clothes to help others in need. She explained that Licensee will

give[] people rides. Somebody can't get a ride to a [NA or AA] meeting … she's the one that takes them, makes sure they get there. She's on the phone with them if they're having a crisis.

N.T. 31; R.R. 31.

Tom Abruzzese, Licensee's father, testified that Licensee has worked very hard to change her life. He confirmed that Licensee actively participates in the recovery program and gives talks on addiction and recovery.

The hearing examiner credited Licensee's testimony and that of her family members, which was offered to show that Licensee "has achieved significant personal growth and rehabilitation since having committed her crime and, as a result, is not likely to revert to using or selling drugs." Proposed Adjudication, 4/5/2017, at 9. The hearing examiner found that Licensee's witnesses "attested to the dramatic transformation [Licensee] has undertaken in terms of the growth she has experienced since her arrest and completion of drug treatment." *Id.* The hearing examiner observed, nevertheless, that Licensee's abstinence, which began in February of 2015, was not one of long duration. Further, her sentence of probation did not end until 2020. Given her history of drug abuse, the hearing examiner questioned Licensee's

5

ability to live a life free from drug use and criminal behavior. In particular, the record fails to contain sufficient substantive mitigating evidence through the presentation of expert testimony or similar authority to significantly eliminate concerns about [Licensee's] ability to safely practice the profession.

*Id.* at 10. Consistent with these observations, the hearing examiner rejected Licensee's request that the Board refrain from the imposition of any sanction or discipline.

Instead, the hearing examiner accepted the Bureau's recommendation that Licensee's license be suspended but with the suspension immediately stayed, so that she could continue to work. The hearing examiner found that the Bureau's proposed discipline would protect the public and would deter Licensee from repeating her criminal conduct. The hearing examiner believed that a period of two years probation was appropriate given "the recent nature of [Licensee's] conduct and concerns over her effect on public safety." *Id.*

Thereafter, the Board issued a notice of its intent to review the hearing examiner's proposed adjudication. Neither party filed a brief. On July 14, 2017, the Board issued a final adjudication that indefinitely suspended Licensee's license effective August 14, 2017, with the opportunity to request a probationary reinstatement of her license on August 14, 2018. The Board explained that it was concerned about the "vulnerable state" of patrons who are often separated from "their personal belongings while receiving various services within a salon." Final Adjudication, 7/14/2017, at 9. Licensee petitioned for this Court's review.[3]

---

[3] This Court's review of a licensing board's disciplinary sanction determines "whether there has been a manifest and flagrant abuse of discretion or a purely arbitrary execution of the agency's duties or functions." *Goldberger v. State Board of Accountancy,* 833 A.2d 815, 817 n.1 (Pa. Cmwlth. 2003) (quoting *Slawek v. State Board of Medical Education and Licensure,* 586 A.2d 362, 365 (Pa. 1991)).

6

On appeal, Licensee raises three issues. First, she argues that the Board erred and abused its discretion because the record contains no evidence that patrons and their personal belongings are vulnerable when visiting salons. Second, she argues that the Board's discipline is not based upon substantial evidence of record. Third, she contends that the Board arbitrarily ignored her evidence of mitigation, which warranted a discipline no greater than that recommended by the Bureau. The Board responds that CHRIA fully authorized its discipline and that Licensee seeks to have this Court reweigh the evidence, which it cannot do.

**Applicable Law**

This matter arises under Section 9124(c) of CHRIA, which states, in relevant part, as follows:

> (c) State action authorized.--Boards, commissions or departments of the Commonwealth authorized to license, certify, register or permit the practice of trades, occupations or professions *may refuse to grant or renew, or may suspend or revoke any license, certificate, registration or permit for the following causes*:
>
> > (1) Where the applicant has been convicted of a felony.
> >
> > (2) Where the applicant has been convicted of a misdemeanor which relates to the trade, occupation or profession for which the license, certificate, registration or permit is sought.

18 Pa. C.S. §9124(c) (emphasis added). CHRIA is a general statute that applies to every Pennsylvania agency charged with the responsibility to license or permit the practice of a "trade, occupation or profession." *Id.* This runs the gamut from the licensing of insurance agents and commercial truck drivers to brain surgeons.

7

The particular law that governs a limited cosmetology license is the Beauty Culture Law. Section 5(a) states as follows:

> An applicant for a limited license shall be at least sixteen years of age, be of good moral character, have completed a tenth grade education or the equivalent thereof and pay the applicable fee to the board.

63 P.S. §511(a). Limited licenses are issued to estheticians, nail technicians and those who do natural hair braiding. Section 5(b) of the Beauty Culture Law, 63 P.S. §511(b). The limited license of an esthetician requires the applicant to complete 300 hours of instruction and to pass "an examination limited to that practice." 63 P.S. §511(b)(1).

In addition, Section 13(a) of the Beauty Culture Law regulates the conduct of all licensed cosmetologists, including those holding a limited license. It states:

> (a) *The board shall have the power to* refuse*, revoke*, refuse to renew *or suspend licenses*, upon due hearing, *on proof of violation of any provisions of this act,* or the rules and regulations established by the board under this act, *or for gross incompetency or dishonest or unethical practices, or for failing to submit to an inspection of a licensee's salon* during the business hours of the salon ….

63 P.S. §519(a) (emphasis added).[4] This Court has construed Section 13(a) to mean that a "license can be revoked 'for gross incompetency or dishonest or unethical

---

[4] The Board has adopted a regulation to authorize a license suspension for a violation of the Drug Act. That regulation states as follows:

> The license of a licensee who has pled guilty or nolo contendere to, or has been convicted of, a felony under [the Drug Act], or a similar State or Federal law, shall be subject to suspension or revocation under section 13 of the [Beauty Culture Law] (63 P.S. §519).

practices' but, like the [Barber License] Law,[5] does not include any reference to revocation for criminal convictions." *Kirkpatrick v. Bureau of Professional and Occupational Affairs, State Board of Barber Examiners,* 117 A.3d 1286, 1293 (Pa. Cmwlth. 2015).

The absence of licensing restrictions for criminal convictions in the Beauty Culture Law has allowed the Pennsylvania Department of Corrections, in conjunction with the Board of Cosmetology, to offer cosmetology training to eligible inmates. Upon successful completion of this program, the inmates are eligible for state licensure. *See* Department of Corrections' Inmate Grooming and Barber/Cosmetology Programs Procedures Manual, Policy Number DC-ADM 807, Section 2(A)(3) (effective July 15, 2016).[6] The goal, as stated in the Policy, is to return inmates to the community as employable, law-abiding citizens.

CHRIA is a general law that authorizes, but does not require, an agency to suspend a license upon the licensee's felony conviction. CHRIA does not provide any standards for the exercise of the agency's discretion under Section 9124(c)(1) to

---

49 Pa. Code §7.98. The Board did not cite the above-quoted regulation in either its Order to Show Cause or its adjudication. The sole legal basis for the Board's Order to Show Cause was CHRIA, *i.e.*, 18 Pa. C.S. §9124(c)(1).

[5] Act of June 19, 1931, P.L. 589, *as amended*, 63 P.S. §§551-567.

[6] It states:

> The barber/cosmetology programs are registered programs. Students who successfully complete the programs are eligible for state licensure in three categories: barber, barber-manager, and cosmetology. The barber/cosmetology programs provide vocational skills as part of an overall goal of inmates returning to the community as employable, law-abiding citizens.

Department of Corrections' Inmate Grooming and Barber/Cosmetology Programs Procedures Manual, Policy Number DC-ADM 807, Section 2(A)(3).

suspend or revoke a license for a felony conviction.[7] The specific, and more relevant statute is the Beauty Culture Law, and it does not authorize any discipline for criminal convictions unrelated to the practice of the profession. *Kirkpatrick*, 117 A.3d at 1293.

The Board "exercises considerable discretion in policing its licensees." *Ake v. Bureau of Professional and Occupational Affairs, State Board of Accountancy*, 974 A.2d 514, 519 (Pa. Cmwlth. 2009). The weight to assign to mitigating evidence is a matter committed to the professional board's discretion. *Burnworth v. State Board of Vehicle Manufacturers, Dealers and Salespersons*, 589 A.2d 294, 296 (Pa. Cmwlth. 1991). This Court, however, "is required to correct abuses of discretion in manner or degree of penalties imposed." *Ake*, 974 A.2d at 519 (citation omitted); *see also Phan v. Bureau of Professional and Occupational Affairs, State Board of Cosmetology* (Pa. Cmwlth., No. 1646 C.D. 2011, filed May 7, 2012), slip op. at 9 (unreported).[8]

An administrative agency may appoint a hearing examiner to take evidence and make a recommendation to the agency head on how to dispose of the matter. *Pellizzeri v. Bureau of Professional and Occupational Affairs*, 856 A.2d

---

[7] The non-delegation doctrine is a corollary of the separation of powers enshrined in the Pennsylvania Constitution and applies to all legislation. The doctrine requires, first, the General Assembly to make "the basic policy choices" and, second, to enact legislation that includes "'adequate standards which will guide and restrain the exercise of the delegated administrative functions.'" *Protz v. Workers' Compensation Appeal Board (Derry Area School District)*, 161 A.3d 827, 834 (Pa. 2017) (quoting *Pennsylvanians Against Gambling Expansion Fund, Inc. v. Commonwealth*, 877 A.2d 383, 418 (Pa. 2005)). Section 9124(a)(1) of CHRIA does not provide standards to guide or restrain the agency's discretion in suspending a license for a felony conviction. Whether Section 9124(a)(1) violates the non-delegation doctrine is not before the Court.

[8] Pursuant to Commonwealth Court Internal Operating Procedures §414(a), 210 Pa. Code §69.414(a), an unreported opinion of this Court may be cited for its persuasive value.

297, 301 (Pa. Cmwlth. 2004). The agency head is not required to adopt the hearing examiner's proposed findings of fact and conclusions of law. *McDermond v. Foster*, 561 A.2d 70, 72 (Pa. Cmwlth. 1989) (citing *Bucks County Public Schools Intermediate Unit No. 22 v. Department of Education*, 529 A.2d 1201 (Pa. Cmwlth. 1987)).

With these principles in mind, we turn to the instant appeal.

**Analysis**

In her first issue, Licensee contends that the Board's adjudication should be reversed because it relied on evidence not of record. The Bureau, which prosecuted the case against Licensee, recommended a suspension, to be immediately stayed for a one-to-two-year period of probation. The hearing examiner recommended that course of discipline to the Board, but it was rejected. The Board reasoned as follows:

> Patrons of a cosmetology salon are considered to be in a vulnerable state while receiving services, in that they are often separated from their personal belongings while receiving various services within a salon. A patron's personal belongings may contain any number of things, including controlled substances prescribed to the patient from their (sic) treating physician.

Final Adjudication, 7/14/2017, at 9. Licensee contends the Board's stated reasons for rejecting the hearing examiner's recommendation are fatally flawed because they are based upon facts not of record. We agree.

Here, the Bureau, which prosecuted the case, did not produce any evidence on salon and spa operations. Consequently, there is zero evidence in the record that patrons are in a vulnerable state while receiving services; are separated from their personal belongings while receiving services; or carry controlled

11

substances in their pocketbooks. Further, Board members may not fill the gaps in the evidentiary record by using their personal knowledge. *Yi v. State Board of Veterinary Medicine*, 960 A.2d 864, 869 (Pa. Cmwlth. 2008) (holding that the personal knowledge of board members is not a substitute for record evidence). Board members must rely only upon the evidence of record in rendering an adjudication. It is a requirement of due process that an agency base "its adjudication on evidence admitted at the hearing and not on matters that are not in evidence." *Campbell v. Bureau of Professional and Occupational Affairs, State Board of Medicine* (Pa. Cmwlth., No. 44 C.D. 2014, filed July 8, 2014), slip op. at 7 (unreported).

We hold that the Board erred as a matter of law and abused its discretion by assuming facts not in evidence when it rejected the recommendation of both the Bureau and the hearing examiner.

In her second issue, Licensee contends that the Board abused its discretion in imposing an indefinite suspension of her license, which it did by assigning little or no weight to her mitigating evidence.[9] The Board contends that this was appropriate because Licensee did not present "documentation" to support her testimony. Board Brief at 14. It further responds that it is not known whether Licensee is "in early sustained remission or even safe to perform services for citizens of the Commonwealth." *Id.* at 16.

---

[9] The excessive fines clause of the Eighth Amendment to the United States Constitution prohibits the imposition of an excessive civil penalty or sanction. *Commonwealth v. Eisenberg*, 98 A.3d 1268, 1281 (Pa. 2014). Whether a civil sanction or discipline is excessive is determined by a proportionality analysis. *Id.* at 1282 (applying the test established in *Solem v. Helm*, 463 U.S. 277 (1983)).

Licensee's criminal punishment consisted of five years of probation and court costs. Whether the Board's punishment of an indefinite license suspension is grossly disproportionate is not before the Court.

To begin, Licensee committed her criminal conduct before she was licensed. She fully disclosed this conduct and her arrest to the Board, which then licensed her. A limited license requires, *inter alia*, "good moral character." Section 5(a) of the Beauty Culture Law, 63 P.S. §511(a). The Board found Licensee's drug history not to be an impediment to granting her a license. Rather, it was her one-count felony *nolo contendere* plea that became the impediment to her continued licensing. The Board's argument that it does not know whether it is safe for Licensee to perform services rings hollow. It apparently thought safety was not a concern when it granted her a license with the knowledge of her drug history and arrest.

The Board also casts doubt on Licensee's mitigating evidence. Its analysis in this regard is flawed.

The Board reasoned that the testimony of her family witnesses was biased. The Bureau did not cross-examine any of Licensee's family members to establish bias; again, the Board assumed facts not in evidence. Further, the Board did not find that Licensee's supporting witnesses were not credible. They were fact witnesses who testified, candidly, about Licensee's past problems and what they had personally observed since February 2015. None of their testimony was rebutted in any way by the Bureau.

The Board also demanded "documentation" with respect to Licensee's testimony about her new life. The Board complained as follows:

> [On] her rehabilitation, taking part in a detoxification program, participating in intensive outpatient therapy and being diagnosed with opioid dependency, depression and anxiety, *there is absolutely no documentation in the record that corroborates these statements*.

13

Final Adjudication, 7/14/2017, at 9 (emphasis added). Referring to Licensee's testimony about her cooperation "with law enforcement authorities to arrest a physician whom they believed was improperly prescribing controlled substances," the Board again complained that "there is no documentary evidence in the record to substantiate that claim …." *Id.*

In this reasoning, the Board has violated an important evidentiary principle. Written documents are not preferable to oral statements, as the Board mistakenly believes. There is no such evidentiary principle. *See Commonwealth ex rel. Park v. Joyce*, 175 A. 422, 424 (Pa. 1934) ("[T]here is no rule preferring written to oral statements."). A document needs to be produced only where the contents of the writing are at issue. *In re A Condemnation Proceeding by South Whitehall Township*, 822 A.2d 142, 145 (Pa. Cmwlth. 2003). The best evidence rule does not apply where the matter to be proved exists independently of the writing. *Commonwealth v. Harris*, 719 A.2d 1049, 1051 (Pa. Super. 1998). Whether Licensee assisted law enforcement and participates in ongoing therapy are facts that exist independent of written documentation that might also be probative. The Board incorrectly invoked the best evidence rule, which requires the submission of documents only where the contents of those documents are at issue. This was palpable error on the part of the Board.

The Board's stated reasons for dismissing Licensee's mitigating evidence do not withstand close scrutiny. We hold that the Board erred and abused its discretion by holding that testimonial evidence alone was not sufficient to establish the facts to which Licensee testified and by discounting the testimony of her witnesses as "biased" when bias was neither claimed nor proven by the Bureau.

14

**Conclusion**

The Bureau, which was charged with prosecuting this case, presented no evidence, other than the documents attesting to Licensee's conviction. Arguably, even this limited evidence was not needed because Licensee had admitted her one-count felony conviction in her answer. At the hearing, the Bureau's counsel stated:

> The Commonwealth doesn't believe revocation is appropriate in this case either. Not even close to it, to be honest. It seems she's undergoing a financial hardship at the time, so we don't believe that a civil penalty is in order. The Commonwealth would recommend a year --- two years maximum probation that way we can keep a very distant eye on it to see if anything does go wrong. And again, then we'll lay the hammer down. Thank you.

N.T. 80; R.R. 80. The Bureau's proffered discipline addresses the Board's safety concerns because, as its counsel noted, a probationary license may be swiftly revoked. Licensee does not challenge the discipline recommended by the Bureau and the hearing examiner.

Because the Board erred as a matter of law and abused its discretion by rejecting the discipline recommended by the Bureau and the hearing examiner, we reverse the Board's adjudication. We remand the matter to the Board to adopt the recommended report of the hearing examiner.

_____
MARY HANNAH LEAVITT, President Judge

15

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Rosemarie Abruzzese,                          :
                Petitioner          :
                              :
           v.                          :   No. 1121 C.D. 2017
                              :
Bureau of Professional and                    :
Occupational Affairs, State                   :
Board of Cosmetology,                         :
                Respondent          :

# **O R D E R**

AND NOW, this 16th day of April, 2018, the order of the Bureau of Professional and Occupational Affairs, State Board of Cosmetology (Board) is REVERSED and this case is REMANDED to the Board to adopt the recommended report of the hearing examiner.

        Jurisdiction relinquished.

                                   _____
                                   MARY HANNAH LEAVITT, President Judge