J-S56031-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF A.G.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: J.H., FATHER | : | |
| | : | |
| | : | No. 1842 EDA 2020 |

Appeal from the Decree Entered August 18, 2020
In the Court of Common Pleas of Montgomery County Orphans' Court at
No(s): No. 2020-A0034

BEFORE: BENDER, P.J.E., KUNSELMAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.: **FILED: DECEMBER 31, 2020**

J.H. (Father) appeals from the decree entered in the Court of Common Pleas of Montgomery County (trial court) involuntarily terminating his parental rights to his daughter, A.G.H. (Child) (D.O.B. January 2018) and changing Child's permanency goal to adoption.[1] We affirm.

**I.**

**A.**

The Montgomery County Office of Children and Youth (OCY) became involved with Child's family in August 2018 because of concern regarding

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Child's birth mother, L.M. (Mother) voluntarily relinquished her parental rights on July 27, 2020. She is not a party to this appeal.

Father and Mother's (collectively, Parents) lack of stable housing, unemployment and drug abuse (heroin). The Family Service Plan (FSP) OCY implemented in October 2018 provided for Child to live with paternal grandmother (Grandmother) and for supervised visitation with Parents. Child was adjudicated dependent on January 15, 2019, after Father violated the FSP by refusing to comply with OCY's drug screen request.

**B.**

On February 24, 2020, OCY filed a petition seeking termination of Parents' parental rights to Child. The trial court held a hearing with regard to Father on August 18, 2020.[2] OCY presented the testimony of the family's caseworker Reginald Nelson (Nelson) and Father testified on his own behalf.

Nelson testified that Child has continuously resided with Grandmother since October 2018. (*See* N.T. Termination Hearing, 8/18/20, at 11-12). After Nelson's initial attempts to schedule a meeting with Father to discuss the goals of the FSP via text messages, phone calls and unannounced visits failed, he sent Father a copy of the plan in the mail. (*See id.* at 15). When Nelson made contact with Father, they discussed the requirements of the FSP, specifically, that Father participate in drug and alcohol treatment, submit to

_____

[2] The hearing was conducted remotely via videoconference due to the COVID-19 pandemic.

random drug screening, obtain stable housing and steady employment, abstain from drug use and consistently visit with Child. (*Id.* at 16).

Nelson testified that at the time OCY filed the petition for termination of parental rights, Father had not met any of the FSP goals. (*See id.*). Although Father underwent an evaluation and was advised of his need for substance abuse treatment in July 2019, he failed to enroll in any such program. (*See id*. at 17-18). Father did not provide OCY with any documentation of treatment until approximately one month before the hearing in July 2020 that showed that he was participating in a Suboxone medication management treatment program.[3] (*See id.* at 18, 36). Nelson testified that Father was largely noncompliant with drug screening attempts and that three of his four drug tests were positive. (*See id.* at 21-22). Father has tested positive for cocaine, methamphetamine, opiates and fentanyl and he admitted to marijuana use. (*See id.* at 21-22, 37). Nelson also obtained Father's drug screen results administered through the medication management treatment program. These screens were negative except for the drugs he had been prescribed. (*See id.* at 36-37).

_____

[3] Suboxone is a medication approved by the Food and Drug Administration for the treatment of opioid addiction. *See Abruzzese v. Bureau of Prof'l & Occupational Affairs, State Bd. of Cosmetology*, 185 A.3d 446, 449 n.1 (Pa. Cmwlth. 2018).

Regarding the requirement of suitable housing, Nelson testified that he was able to visit Father's apartment on April 19, 2019. The residence was not appropriate for Child and had no electricity. (*See id.* at 23, 25). Father did not cooperate with Nelson's numerous attempts to revisit the home until two weeks before the hearing and it remained unsuitable for Child. (*See id.* at 23-25).

Concerning the goal of stable employment, Nelson explained that Father does not have a steady job, that he works seasonally and that he was unemployed during the six months prior to the filing of the termination petition. (*See id.* at 25-26). At the time of the hearing, Father had recently started a job but Nelson opined that Father still did not have the ability to support himself and Child. (*See id.* at 26). With regard to visitation, Father has not been consistent in his efforts to schedule supervised visitation with Child and his whereabouts have been unknown to OCY during certain time periods. (*See id.* at 27-28). When Father eventually attempted to arrange vitiation in July 2020, the visits were declined because he did not provide documentation of his participation in drug treatment nor was he compliant with drug screens. (*See id.* at 28-29). Just prior to the hearing, Father began FaceTime telephone visitation with Child but the calls were not consistent. (*See id.* at 29, 37-38).

In describing the conditions of Grandmother's home, Nelson testified that it is suitable for Child and that Grandmother provides Child with

appropriate clothing and meets all of her other everyday necessities. (**See id.** at 25, 33). Grandmother and Child have a strong bond and Grandmother provides her with emotional support. (**See id.** at 33-34). Nelson opined that Father's parental rights to Child should be terminated, that termination is in Child's best interests, and that she would not be irreparably harmed by termination. (**See id.** at 34).

Father then testified that he has lived by himself in his apartment for about two years, that it is a safe and stable environment for Child and that he has allowed Nelson to visit on multiple occasions. (**See id.** at 45). Father explained that he is participating in a Suboxone maintenance treatment program and that he was about to start an intensive six-month outpatient program. (**See id.** at 46, 63). Father testified that he provided for Child while she lived with him until she was eight months' old, and that when supervised visitation began, he saw her every other day at Grandmother's house. (**See id.** at 47-49, 52). Father averred that he has telephone or FaceTime contact with Child daily through Grandmother, that Child is happy when she sees him and that she calls him "Dada." (**See id.** at 51-52). Father expressed his love for Child and his desire to change his life to raise her. (**See id.** at 52).

Father admitted on cross-examination that he began using heroin in August 2018 when his brother died. (**See id.** at 53). Prior to that, he used Percocet because he had kidney stones. (**See id.** at 54). Father explained that he had used heroin once every three or four days and that he snorted

about seven bags of the drug during each episode. (***See id.*** at 58). Father testified that he stopped using heroin in June 2020. (***See id.*** at 59). He also stated that his apartment was never without electricity and that Nelson's testimony to the contrary was "a lie." (***Id.*** at 60). Father explained that he was laid off from his job at about the time he started using heroin, that he was collecting unemployment and working "under the table lately." (***Id.***).

At the conclusion of the hearing, the trial court entered its decree terminating Father's parental rights pursuant to § 2511(a)(1),(2),(8) and (b) of the Adoption Act.[4]  Father timely appealed and he and the trial court complied with Rule 1925. ***See*** Pa.R.A.P. 1925(a)(i)-(ii).[5]

## II.

On appeal, Father contends that the trial court erred in terminating his parental rights pursuant to multiple subsections of 2511(a). The crux of

---

[4] 23 Pa.C.S. §§ 2101-2938.

[5] Our standard of review in termination of parental right cases

> requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result.

***In re J.W.B***., 232 A.3d 689, 695 (Pa. 2020) (citation omitted).

Father's claim is that he has made significant progress towards improving his life to care for Child, including participating in drug treatment and screening, securing suitable, safe housing and maintaining consistent contact with Child. Father also argues that termination of his parental rights is not in Child's best interests and is premature given that he has a significant bond with Child and is capable of caring for her.

**A.**

Section 2511 of the Adoption Act governs the involuntary termination of parental rights and requires a bifurcated analysis:

> . . . Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re Adoption of B.G.S.*, 240 A.3d 658, 662-63 (Pa. Super. 2020) (case citation omitted).

As noted, the trial court terminated Father's parental rights pursuant to Section 2511(a)(1),(2), (8) and (b) of the Adoption Act, which provide:

> **(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(1), (2), (8) and (b).

It is well-settled that "[w]e need only agree with [the trial court's] decision as to any one subsection of Section 2511(a) and subsection (b) in order to affirm the termination of parental rights." *Int. of K.M.W.*, 238 A.3d 465, 473 (Pa. Super. 2000) (citation omitted). For the following reasons, we

- 8 -

conclude that the trial court correctly determined that OCY met its burden of proof under subsections 2511(a)(2) and (b).

**B.**

We first address termination of Father's parental rights pursuant to Section 2511(a)(2).

> Section 2511(a)(2) provides for termination of parental rights where the petitioner demonstrates by clear and convincing evidence that "[t]he repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent." 23 Pa.C.S. § 2511(a)(2). The grounds for termination of parental rights under Section 2511(a)(2) due to parental incapacity are not limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties.
>
> This Court has long recognized that a parent is required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. At a termination hearing, the orphans' court may properly reject as untimely or disingenuous a parent's vow to follow through on necessary services when the parent failed to co-operate with the agency or take advantage of available services during dependency proceedings.

*Id.* at 473–74 (case citations omitted).

Applying these principles, the trial court concluded that Father's history of substance abuse, unstable employment and inadequate housing rendered him incapable of parenting Child and caused her to be without essential parental care, control or subsistence. The court found:

> Father does not have the means to support Child because he is unemployed. He was laid off from his former job when he started to use heroin. He admitted to using heroin beginning

- 9 -

between August and November 2018 and continuing until June 2020. He admitted to spending his unemployment income on drugs.

Father's living arrangement is not suitable to provide the subsistence necessary for Child's wellbeing. Father has made no meaningful attempts to remedy this situation before OCY filed the termination petition. Such neglect has caused Child to be without essential parental care, control or subsistence necessary for her physical or mental wellbeing, and Father has not shown that the cause of his neglect can be remedied.

. . . The overwhelming evidence that Father did not comply with substance-abuse treatment [] suggests that he continues to use drugs or does not care about his Child. His drug use has caused Child to be without essential parental care, control or subsistence necessary for her physical or mental well-being. Despite efforts of OCY and Mr. Nelson to make Father seek treatment for substance-use disorder, it appears that such incapacity or refusal cannot or will not be remedied voluntarily by him. These circumstances indicate that Father is incapable of providing safety and permanency for Child now and in the future.

(Trial Court Opinion, 9/24/20, at 10-11).

Further, with regard to Father's living arrangements, the trial court specifically found Father's testimony alleging Nelson's "lie" concerning the condition of his apartment not credible. (**See** N.T. Termination Hearing, at 70). Our review of the record supports the trial court's findings. We decline to disturb the court's credibility determinations or reweigh the evidence. Accordingly, we conclude that the court did not abuse its discretion when it terminated Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(2).[6]

_____

[6] For similar reasons, clear and convincing evidence demonstrates that termination was also warranted under subsections 2511(a)(1) and (8). Father

**C.**

Having found that termination of Father's parental rights was appropriate under Section 2511(a), the next step of our inquiry is to consider whether termination is in the best interests of Child under Section 2511(b).

> With respect to Section 2511(b), our analysis focuses on the effect that terminating the parental bond will have on the child. In particular, we review whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. It is well settled that intangibles such as love, comfort, security, and stability are involved in the inquiry into needs and welfare of the child.
>
> One major aspect of the "needs and welfare" analysis concerns the nature and status of the emotional bond that the child has with the parent, with close attention paid to the effect on the child of permanently severing any such bond. The fact that a child has a bond with a parent does not preclude the termination of parental rights. Rather, the trial court must examine the depth of the bond to determine whether the bond is so meaningful to the child that its termination would destroy an existing, necessary, and beneficial relationship. Notably, where there is no evidence of a bond between the parent and child, it is reasonable to infer that no bond exists.
>
> It is sufficient for the trial court to rely on the opinions of social workers and caseworkers when evaluating the impact that termination of parental rights will have on a child. The trial court may consider intangibles, such as the love, comfort, security, and stability the child might have with the foster parent.

_____

has not shown an ability to overcome his substance abuse, unemployment or living arrangement issues to the extent that he could appropriately care for Child. Although he has recently undergone some substance abuse treatment and claims to have made lifestyle changes to provide necessary support for Child, the trial court did not err in concluding that he fell short in this regard.

***Int. of K.M.W., supra*** at 475 (case citations and most quotation marks omitted).

Instantly, Father maintains that he and Child have a significant bond and that Child is excited to see him during telephone visitation and refers to him as "Dada". He argues that termination is premature and not in Child's best interests.

In contrast, Nelson testified that Child has lived continuously with Grandmother for approximately two years and that Grandmother has consistently met all of Child's material and emotional needs. Nelson further testified that Child and Grandmother share a strong bond and he opined that termination of Father's rights is in Child's best interests and would not irreparably harm her.

The trial court, after considering all of the testimony, determined that termination served Child's best interests. The court noted its appreciation for Father's recent efforts to place himself in drug treatment and make regular telephone contact with Child. (**See** N.T. Termination Hearing, at 70-71). However, it found that termination would best meet Child's developmental, emotional and physical needs, stating: ". . . the fact that she recognizes you and is happy to see you on FaceTime does not make you an appropriate parent for this child. . . . I believe you love her, but that's not enough. You are fortunate that your mother was willing to step in." (***Id.*** at 71; **see also** Trial Ct. Op., at 13).

The evidence supports the trial court's conclusion that terminating Father's parental rights is in Child's best interests. Child has resided with Grandmother for most of her short life. Grandmother cares for Child and meets all of her needs. Father's opioid addiction and inability to provide a safe environment or financial support for Child further establish that termination is in her best interests. Thus, we find no abuse of discretion in the trial court's decision to terminate Father's parental rights to Child and in changing her goal to adoption.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/31/20