IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James J. McCarthy & Associates, PC,  :
                  Petitioner  :
                                 :
                                 :  No.  177 C.D. 2020
              v.  :
                                 :  Argued:  December 7, 2020
Bureau of Professional and Occupational  :
Affairs, State Board of Accountancy,  :
                   Respondent  :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge[1]
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge

*__OPINION NOT REPORTED__*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                      FILED:  April 16, 2021

        James J. McCarthy & Associates, PC (Petitioner) petitions for review of the January 23, 2020 order of the Bureau of Professional and Occupational Affairs, State Board of Accountancy (Board), which imposed a $1,000.00 civil penalty upon Petitioner for practicing and holding itself out as a public accounting firm without the required licensure under the CPA Law.[2]  Before this Court, Petitioner argues, among other things, that the doctrine of laches bars the administrative disciplinary action.  We agree and reverse.

---

[1] This case was assigned to the opinion writer before January 4, 2021, when Judge Leavitt completed her term as President Judge.

[2] Act of May 26, 1947, P.L. 318, *as amended,* 63 P.S. §§9.1-9.16b.

## Background

In its final adjudication and order, dated January 23, 2020, the Board reviewed the record established by the hearing examiner in this matter and set forth the factual and procedural background of this case, which we summarize, in its relevant respect, as follows.

Petitioner, a professional corporation, held a Pennsylvania certificate and license to practice as an accountancy firm, license number AF054824. This certificate and license was originally issued on July 18, 2011, lapsed from January 1, 2014, until September 11, 2015, and expired on December 31, 2015. Once the certificate and license had lapsed, Petitioner's certificate could have been renewed, reactivated, or reinstated upon filing the appropriate documentation and paying the necessary fees. On January 13, 2014, Petitioner's principal, James J. McCarthy, CPA, sent an email to the Board, alerting the Board that he needed Petitioner's license number and registration code in order to the renew the license online. On that same date, Lisa Love, a Reviewing Officer for the Board, sent Petitioner's principal a return email which included the firm's license number and registration code. However, Petitioner's principal did not see the return email at the time and forgot about renewing the firm's license until it was brought to his attention in August of 2015. Eventually, Petitioner's principal renewed Petitioner's license in September of 2015. (Board's Findings of Fact (F.F.) at Nos. 1-3, 14-16; Reproduced Record (R.R.) at 63a-65a, 114a.)

On January 23, 2019, the Commonwealth sent an Order to Show Cause to Petitioner by certified mail, return receipt requested, and by first-class mail, postage prepaid, to Petitioner's listed business address. In the Order to Show Cause, the Commonwealth averred that Petitioner completed an audit and compilation and engaged in the practice of accountancy while its license was lapsed. On March 14,

2

2019, Petitioner filed an Answer to the Order to Show Cause, in which it raised New Matter, including equitable and estoppel defenses sounding in laches. (Board's F.F. at Nos. 5-6; R.R. at 3a-4a, 11a-23a.) Following a hearing held on June 13, 2019, before the hearing examiner, and upon its independent review of the record, the Board found that

> 9. [Petitioner] held itself out as a public accountancy firm during the time that its license was lapsed by generating letters dated October 27, 2014, and November 11, 2014, on firm letterhead with the caption, "James J. McCarthy, Jr. and Associates P.C., XXXX Xxxx Street, Harrisburg, PA 17103-1624, Certified Public Accountants, Phone: [(xxx) xxx-xxxx."]
>
> 10. Included in the letterhead caption were the names of two CPAs associated with the firm; James J. McCarthy, CPA, JD, and Michael P. Furjanic, CPA.
>
> 11. Letters from [Petitioner] dated October 27, 2014, and November 11, 2014, were signed, "James J. McCarthy & Associates, P.C., CERTIFIED PUBLIC ACCOUNTANTS."
>
> 12. The letter dated October 27, 2014, stated that [Petitioner] conducted an audit for the Pennsylvania Emergency Health Services Council [(PEHSC)] "in accordance with auditing standards generally accepted in the United States of America and the standards applicable to financial audits contained in Government Auditing Standards, issued by the Comptroller General of the United States."
>
> 13. The letter dated November 11, 2014, stated that it was [Petitioner's] responsibility "to conduct the compilation in accordance with Statements on Standards for Accounting and Review Services issued by the American Institute of Certified Public Accountants."

(Board's F.F. at Nos. 9-13.)

3

Significantly, the uncontroverted evidence established that Petitioner performed the October 27, 2014 audit for the firm's only client, PEHSC. Further, the October 27, 2014 audit was the final audit that Petitioner performed for PEHSC, and it performed no other audits since that time. Petitioner existed solely for purposes of serving PEHSC, and, following the audit and compilation in October and November of 2014, respectively, Petitioner no longer provided services to that client or any other. Thereafter, in correspondence to the Board, Petitioner advised the Board that it would not be practicing with its accountancy firm license and requested out-of-business status as of December 31, 2015. (Hearing Examiner's (H.E.) F.F. at Nos. 5-6, 11-12; R.R. at 42a, 65a-67a, 120a.)

Ultimately, on the evidence of record, the Board found that, in 2014, "[Petitioner] completed one audit and one compilation report while its license was lapsed" and "[Petitioner] completed two [] jobs that would have required it to hold a CPA firm license during the period in which [Petitioner's] license was lapsed." (Board's F.F. at Nos. 17-18.) Based on these findings, the Board concluded that "[Petitioner] violated Sections 12(c), 63 P.S. §9.12(c), and 12(q), 63 P.S. §9.12(q), of the CPA Law[3] by engaging in the practice of public accounting and holding itself out as an accounting firm without holding a current license" and, therefore, was "subject

_____

[3] In pertinent part, Section 12(c) provides: "[I]t is unlawful for any partnership, corporation or other association to hold itself out as or otherwise use the title or designation 'certified public accountant' or 'public accountant' or the abbreviation 'CPA' or 'PA,' or any other title, designation, words, letters or abbreviation tending to indicate that the partnership, corporation or other association is composed of or includes certified public accountants or public accountants unless the partnership, corporation or other association holds a current license[.]" 63 P.S. §9.12(c).

Section 12(q) states that "it is unlawful for any person not a licensee to engage in the practice of public accounting in this Commonwealth." 63 P.S. §9.12(q).

to disciplinary action under Section 9[.1] of the CPA Law, 63 P.S. §9.9a(a)(3).[4]"
(Board's Conclusions of Law No. 3.)  Noting that Section 16(c) of the CPA Law, 63
P.S. §9.16(c),[5] authorized it to impose a civil penalty of up to $10,000.00 per violation,
the Board determined that a $1,000.00 civil penalty was appropriate.

To support the amount and imposition of the civil penalty, the Board
stated that "[t]he maintenance of a current license is the most basic requirement under
the CPA Law for a firm engaged in the practice of public accounting" and "[t]he
renewal of a firm license is important for verifying compliance with [accounting]
activity . . . and maintaining a current listing of those firms authorized to practice public
accounting in Pennsylvania in order to protect the public's trust in the accounting
profession."  (Board's decision at 9.)  In determining the amount of a sanction, the
Board noted that it generally weighs the seriousness of the violation against any
mitigating factors.  The Board then stated that it was "troubled by [Petitioner's] practice
as a public accounting firm without proper licensure" and was "concerned with the

---

[4] This section states that when the Board finds a violation of Section 12, the Board

> may revoke, suspend, limit or otherwise restrict the certificate of a
> certified public accountant or the registration of a public accountant,
> may revoke, suspend, limit or otherwise restrict any license issued
> under this act, may censure or publicly reprimand the holder of any
> certificate, registration or license, may require completion of general or
> a specific number of continuing professional education courses or may
> require more frequent peer review or other remedial action, or may
> revoke, suspend or limit the right of an individual to practice under
> section 5.2 of this act or censure or publicly reprimand an individual
> practicing under section 5.2 of this act[.]

Added by the Act of September 2, 1961, P.L. 1165, 63 P.S. §9.9a(a)(3).

[5] Section 16(c), in relevant part, states that "[i]n addition to any other civil remedy, criminal penalty or discipline provided for in this act, the [B]oard may levy a civil penalty of up to ten thousand dollars ($10,000) on any person for a violation of any provision of this act."  63 P.S. §9.16(c).

5

explanation provided by [Petitioner's] principal as to why the firm's license [had] lapsed." *Id.* With regard to the latter, the Board observed that "[Petitioner's] principal did not have all the information he needed in order to renew the firm's license online," "requested the information from the Board," "did not see the Board's timely response to his request which would have enabled him to renew the firm's license," and "forgot about renewing the firm's license until it was brought back to his attention over 1 [and] 1/2 years later." *Id.*

Moreover, even though the Board did not impose a civil penalty against the individual accountancy license of Petitioner's principal, license number CAO11164L, *see* R.R. at 115a, the Board justified the imposition of a civil penalty against Petitioner with the following rationale:

> The Board is not persuaded by the fact that [Petitioner's] principal testified that he is no longer conducting audits for the firm's sole client[, PEHSC,] under [Petitioner's] firm['s] license. *[Petitioner's] principal testified that he has practiced under various names, and with different individuals, since the 1970s. Given this testimony, it is possible that [Petitioner's] principal could engage in the same violations in the future unless discouraged from doing so. It is the responsibility of every licensee to ensure that [it] compl[ies] with the licensing requirements of the Board.* The Board believes a meaningful disciplinary sanction is justified and necessary in order to protect the public and ensure future compliance with the Board's renewal requirements. Under the circumstances, and in consideration of the mitigating evidence adduced at the hearing in this matter, the Board concludes that imposition of a civil penalty of $1,000[.00] is warranted to deter [Petitioner], as well as others, from failing to strictly adhere to the licensure requirements of the CPA Law.

(Board's decision at 10-11) (emphasis added). Discontent with the Board's decision, Petitioner filed a petition for review in this Court.[6]

**Discussion**

In its brief, Petitioner contends that the disciplinary action was barred by the doctrine of laches. In this regard, Petitioner asserts that, in January of 2016, an investigator from the Bureau of Enforcement and Investigation branch of the Department of State (BEI) requested information relating to the work it performed during the time period its license was lapsed, and Petitioner informed the investigator of—and provided documentation with respect to—the audit and compilation. Petitioner maintains that, consequently, the Board should have known (at the latest) that it conducted accounting activity with a lapsed license in January of 2016. However, as Petitioner highlights, the Order to Show Cause was not issued until approximately three years later in late January of 2019 and, by this time, Petitioner had already informed the Board that it had, in fact, ceased operating as an accountancy firm and would not re-renew its license. This delay in prosecution, Petitioner argues, resulted in prejudice because Petitioner's "condition has changed in that it is no longer operating" and Petitioner's principal had to "bear[] the burden of the defense" and "defending his former entity from sanction." (Petitioner's Br. at 26-27.) We find this line of argument meritorious.

"Delay in the administrative process, especially in the area of professional licensing, has become a serious concern for all involved, and this Court has not and

---

[6] This Court's standard of review of a decision of the Board is limited to determining whether necessary findings of fact are supported by substantial evidence in the record and whether there was an error of law or constitutional violation. *Karkalas v. Bureau of Professional & Occupational Affairs, State Board of Medicine*, 71 A.3d 395, 397 n.4 (Pa. Cmwlth. 2013).

will not condone or excuse improper delays," especially when "the petitioner [] has [] met [its] burden of proving prejudice." *Jackson v. State Real Estate Commission*, 456 A.2d 1169, 1170-71 (Pa. Cmwlth. 1983).

> It is clear that the defense of laches is available as a defense in an administrative disciplinary action. However, it is equally clear that for the defense of laches to apply, more than mere passage of time must be shown. It is required that the person asserting the defense show harm or prejudice resulting from the delay. As an affirmative defense, the petitioner has the burden of proving the delay and the resultant prejudice.

*Id.* at 1170.

In *Fumo v. Insurance Department*, 427 A.2d 1259, 1263 (Pa. Cmwlth. 1981), this Court referred to a delay of three years in instituting license disciplinary action as "seemingly dilatory conduct." Likewise, in *Fumo v. State Real Estate Commission*, 481 A.2d 1257, 1259 (Pa. Cmwlth. 1984),[7] in commenting on a three-year lapse of time in commencing license revocation proceedings, this Court stated that "we certainly do not condone what appears to be an inordinate delay." Pursuant to this case law, we conclude that the three-year passage of time from when the prosecutorial branch of the Department of State obtained information that enabled it to readily verify Petitioner's noncompliance with the CPA Law, to when it issued the Rule to Show Cause on behalf of the Commonwealth, constituted a sufficient period of delay for purposes of laches.

In reaching this conclusion, we emphasize that there are no findings of fact or explanation of record that could reasonably account for the delay. In its brief, the Board simply notes the administrative division within the Department of State. In particular, the Board states that the "BEI works in connection with the Prosecution

---

[7] *Rev'd & remanded on other grounds by* 515 A.2d 1349 (Pa. 1986).

8

Division of the Department of State to assist that division with performing its prosecutorial function"; "[t]he Prosecution Division makes the determination of when a disciplinary hearing is warranted and files an [o]rder to [s]how [c]ause to get the matter before the Board"; and "[t]he Board has an adjudicatory function which is separate and distinct from that of the Prosecution Division's prosecutorial function." (Board's Br. at 17-18.) However, this contention overlooks the fact that Petitioner was entirely forthcoming and cooperative in providing information when asked by an investigator from the BEI, which had obtained from Petitioner all the documentation necessary to ascertain whether there were violations of the CPA Law in this relatively straightforward and elementary case. *See* R.R. at 91a-113a, 121a-25a; H.E.'s F.F. at No. 9. Standing alone, the internal operational affairs amongst the divisions within an administrative body, their interactive features, and the process through which administrative enforcement actions are pursued cannot excuse the delay. If it could, then, conceivably, there would be no such thing as undue delay in the law of laches in disciplinary actions because most—if not all—of enforcement-related administrative agencies are separated and parsed along the lines of investigatory, prosecutorial, and adjudicatory functions.

Therefore, we conclude that Petitioner has established that there was undue delay in this disciplinary action, and the dispositive issue ineludibly becomes whether Petitioner sustained the prejudice necessary to bar the Board's disciplinary action against its license.

In terms of laches, our Supreme Court has stated that "[t]he prejudice required is established where, for example . . . . changes in position occur due to the anticipation that a party will not pursue a particular claim." *Weinberg v. State Board of Examiners of Public Accountants*, 501 A.2d 239, 242 (Pa. 1985). Notably, "the

9

question of laches is a factual one and is determined by examining the circumstances of each case." *United Brotherhood of Carpenters and Joiners of America, Local 261 v. Pennsylvania Human Relations Commission*, 693 A.2d 1379, 1383 (Pa. Cmwlth. 1997).

Prefatorily, the law recognizes that there is a monumental difference and distinction between an individual who possesses a license to practice public accounting and a business entity that owns a license to practice public accounting as an accountancy firm. *See* Section 8.2 and 8.8 of the CPA Law, 63 P.S. §9.8b (Licenses to practice); 63 P.S. §9.8h (Licensing of firms);[8] R.R. at 114a-15a; *see also Goldberg v. Bureau of Professional & Occupational Affairs, State Board of Dentistry*, 39 A.3d 497, 499-50 (Pa. Cmwlth. 2012). As a "qualified association" under the CPA Law, 63 P.S. §9.8h(a)(1)(i), namely a professional corporation vested with a license to practice as an accountancy firm,[9] Petitioner is a business entity that incurs liability, debt, and expenses in its corporate name only, and its individual members and officers are shielded from assuming personal responsibility for such expenditures or obligations. *See Kellytown Co. v. Williams*, 426 A.2d 663, 668 (Pa. Super. 1981) ("Even when a

---

[8] Added by the Acts of September 2, 1961, P.L. 1165, and December 4, 1996, P.L. 851, respectively.

[9] Under Section 8.8(a)(1)(i) of the CPA Law, "[a] person other than an individual shall not practice public accounting in this Commonwealth unless it . . . is a qualified association, has been granted a license to practice and satisfies the requirements of this section at all times while it is a licensee." 63 P.S. §9.8h(a)(1)(i). A "qualified association" is defined in Section 2 of the CPA Law, in pertinent part, as "[a]n association . . . that is incorporated or organized under the laws of this Commonwealth or any other state or foreign jurisdiction if the organic law under which the association is incorporated or organized does not afford the shareholders, partners, members or other owners of equity interests in the association or the officers, employes or agents of the association greater immunity than is available to the shareholders, officers, employes or agents of a professional corporation." 63 P.S. §9.2.

corporation is owned by one person or family, the corporate form shields the individual members of the corporation from personal liability and will be disregarded only when it is abused to permit perpetration of a fraud or other illegality."). Here, the Commonwealth instituted a disciplinary action against Petitioner's accountancy firm license at a time when it was defunct and had ceased operations for approximately three years, having foregone its license for out-of-business status. For all intents and purposes, at least in this licensing matter, Petitioner was effectively "dissolved," to borrow a term from corporate law. Indeed, in its January 23, 2020 order, when the Board "levie[d] a civil penalty of $1,000.00 against the accounting firm certificate and license of Petitioner, License Number AF054824," (Board's decision at Final Order), that license was extinguished and did not exist for over four years. As such, Petitioner was placed in the uncanny situation of defending a disciplinary proceeding in circumstances where it was entirely unclear who or what entity will be legally responsible for the civil penalty and, should it not be paid, who or what entity will bear the legal repercussions.

To be sure, it is questionable that a civil penalty could have been imposed on the accountancy firm license in the first place, because when a person or entity "does not hold a current license for any reason," 63 P.S. §9.9a(b), the Board can only "revoke, suspend, limit or otherwise restrict [a] license." 63 P.S. §9.9a(a); *see* 63 P.S. §9.8h(g).[10]

---

[10] Relevantly, Section 9.1(b) of the CPA Law provides that "[t]he fact that a certified public accountant or public accountant . . . does not hold a current license for any reason shall not limit or otherwise affect the power of the board to discipline him or it as provided in subsection (a)." 63 P.S. §9.9a(b). In turn, subsection (a) states that "the [B]oard . . . may revoke, suspend, limit or otherwise restrict any license issued under this act, may censure or publicly reprimand the holder of any certificate, registration or license, may require completion of general or a specific number of continuing professional education courses or may require more frequent peer review or other remedial action." 63 P.S. §9.9a(a). Finally, subsection (g) of Section 8.8, pertaining to the accounting licensing **(Footnote continued on next page…)**

Otherwise, the provision in the CPA Law pertaining to civil penalties applies to a natural "person," section 16 of the CPA Law, 63 P.S. §9.16, which forcefully indicates that it is a sanction to be levied upon an individual who practices public accounting, and not an accountancy firm license.[11] In essence, then, the Board sought to impose personal liability on Petitioner's principal and his individual license to practice public accounting. This is perhaps best illustrated by the Board's primary justification for imposing the penalty, which was aimed directly and solely at Petitioner's principal himself, finding that "it is possible that [Petitioner's] principal could engage in the same violations in the future unless discouraged from doing so" and stating that the penalty was "necessary in order to . . . ensure future compliance with the Board's renewal requirements." (Board's decision at 10.)

Ultimately, the above reasoning employed by the Board underscores the proposition that the Board essentially sought to impose the civil penalty upon Petitioner's principal, and not Petitioner itself. In point of fact, especially considering that Petitioner has ceased its accounting operations for over four years at the time of the Board's decision, there is nothing in the record to suggest that Petitioner will one day reapply for an accountancy firm license. Consequently, the deterrent rationale that the Board utilized to impose a civil penalty on Petitioner's accountancy firm license was speculative in nature—*i.e.*, that Petitioner may fail to renew its license is the

---

of firms, provides that "the [B]oard may *revoke the license to practice of a firm* if at any time it is in violation of any of the provisions of this section." 63 P.S. §9.8h(g) (emphasis added).

[11] In contrast to power that the CPA Law bestows upon the Board regarding sanctions against an accountancy firm, *see supra* note 8, Section 16 of the CPA Law states, in its pertinent respects, as follows: "In addition to any other civil remedy, criminal penalty or discipline provided for in this act, the [B]oard may levy a civil penalty of up to ten thousand dollars ($10,000) *on any person* for a violation of any provision of this act. . . . The [B]oard may not levy a civil penalty with respect to a violation for which *the person* has been fined or assessed a civil penalty by the accountancy regulatory authority of another state." 63 P.S. §9.16 (emphasis added).

12

future—and, most likely, was legally insufficient to support a sanction on that particular license. *See generally King v. Bureau of Professional & Occupational Affairs, State Board of Barber Examiners*, 195 A.3d 315 (Pa. Cmwlth. 2018) (*en banc*); *Abruzzese v. Bureau of Professional & Occupational Affairs, State Board of Cosmetology*, 185 A.3d 446 (Pa. Cmwlth. 2018).[12] Presumably, this may explain why the Board focused overwhelmingly on Petitioner's principal, rather than Petitioner itself, when substantiating its decision to inflict the civil penalty.

The net result is that, in the three-year delay that occurred in this case, Petitioner, as a licensed accountancy firm, ceased its existence and, subsequently, the nonexistent accountancy firm license was subject to a disciplinary action and a civil penalty. As the record makes clear, the Board effectively attempted to hold Petitioner's principal personally liable instead of Petitioner, a professional corporation. Therefore, we believe that Petitioner has established prejudice because he was forced to defend a disciplinary proceeding where a civil penalty was imposed on a defunct accountancy firm license in a pseudo-like fashion, whereupon the Board basically attempted to "pierce the corporate veil" and hold Petitioner's principal liable for civil penalties in his individual and personal capacity for conduct that he committed in his capacity as a corporate officer. *See The Village at Camelback Property Owners Association, Inc. v. Carr*, 538 A.2d 528, 532 (Pa. Super. 1988) ("Piercing the corporate veil is a means of

---

[12] In *King*, this Court concluded that the Board of Barber Examiners abused its discretion when in assessing the need for "public safety" for a petitioner who was convicted of sexually-related offenses with minors, the board "based its decision to revoke [the petitioner's] barber licenses on mere supposition that [the petitioner] could *potentially* be an instructor to female students under the age of 18 or have contact with minor clients." 195 A.3d at 329 (emphasis in original). In *Abruzzese,* we held that the Board of Cosmetology abused its discretion in basing its decision to suspend an esthetician's license who was convicted of felony possession of a controlled substance, in part, because the board assumed facts not in evidence and created a speculative concern that patrons of a cosmetology salon were vulnerable and often separated from their personal belongings.

13

assessing liability for the acts of a corporation against an equity holder in the corporation.").

Accordingly, for the above-stated reasons, we reverse.


_____
PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James J. McCarthy & Associates, PC, :
               Petitioner :
               : No. 177 C.D. 2020
          v. :
               :
Bureau of Professional and Occupational :
Affairs, State Board of Accountancy, :
               Respondent :

## ***ORDER***

AND NOW, this 16th day of April, 2021, the January 23, 2020 order of the Bureau of Professional and Occupational Affairs, State Board of Accountancy, is hereby REVERSED.

_____
PATRICIA A. McCULLOUGH, Judge